JAMES F. MURPHY, trustee,[1] & others[2] vs. JANET L. OLSEN
& others.[3]

No. 04-P-431.

Suffolk. February 18, 2005. - May 4, 2005.

Present: GREENBERG, DREBEN, & DUFFLY, JJ.

*Beach. Real Property,* Beach, Easement. *Easement.*

This court concluded that the plaintiffs, inland landowners, were entitled to
declaratory relief establishing beach rights over a portion of a certain
beach and over a certain way to that beach, where such rights were incident
to an express reservation of a pedestrian easement to the beach in deeds to
two of the defendants, and where the easement carried with it all rights
reasonably necessary for the full enjoyment of the easement. [421-424]

CIVIL ACTION commenced in the Land Court Department on
January 5, 1995.

The case was heard by *Leon J. Lombardi,* J.

*J. Gavin Cockfield* for James F. Murphy & others.

*Diane C. Tillotson* for the defendants.

*Thomas M. Looney,* for Kenneth E. Albertazzi & another,
was present but did not argue.

DREBEN, J. This action for declaratory relief was brought by
inland landowners seeking to establish beach rights over a por-
tion of Wingaersheek Beach in Gloucester and over a way
(Sandy Way) to that beach. They claim these rights are incident
to an express reservation of a pedestrian easement "to the
beach" in deeds to two of the defendants. The matter was

[1] Of the Wingaersheek Investment Trust.

[2] James J. Mawn, trustee of the Wingaersheek Investment Trust; and Ken-
neth E. Albertazzi, Janice A. Albertazzi, Roy A. Wilkins, Gail A. Wilkins,
David E. Murphy, and Susan M. Murphy.

[3] Brian D. Sullivan and William H. Sullivan, Jr., trustees of Sullivan Realty
Trust II; Patrick J. Banfield and Roberta P. Banfield. Other defendants in the
case below are not part of the appeal before us. See note 6, *infra.*

submitted to a judge of the Land Court on a trial stipulation[4] and agreed upon exhibits without testimony from witnesses.[5] After taking a view (with counsel), the judge determined that the reserved easement was incapable of being exercised for the purpose granted and was extinguished. In claiming error by the judge, the plaintiffs rely, among other arguments, on the principle that an easement carries with it all rights reasonably necessary for the full enjoyment of the easement. We reverse.

The underlying facts are undisputed. The plaintiff-trustees[6] were the developers of two residential noncontiguous subdivisions in Gloucester, one abutting the Atlantic Ocean which included a portion of Wingaersheek Beach (the beach parcel) and the other located inland (the inland parcel). See Appendix to this opinion for sketch of the parcels.

The trustees acquired the two parcels, each of which contains slightly more than ten acres,[7] by a single deed of Mary Brier Goodhue and Nancy Brier Ford dated February 25, 1980 (the Goodhue deed). That deed included the following language which we refer to as the "beach use" clause:

> "Together . . . with the right to use Wingaersheek Beach for its entire length for walking, swimming, sunbathing,

[4]Prior to trial, another judge of the Land Court in denying the plaintiffs' motion for summary judgment set forth undisputed facts established for purposes of trial. See Mass.R.Civ.P. 56(d), 365 Mass. 824 (1974). The trial stipulation included those facts.

[5]Also, prior to trial, the trial judge allowed the plaintiffs' motion in limine to exclude parole evidence on the ground that the easements at issue were not ambiguous.

[6]Prior to this appeal there were multiple parties, including mortgagees of lot owners in both subdivisions. The only present appellants are the trustees who still own a portion of the inland parcel despite completion of both subdivisions, and certain other owners of the inland lots. The only appellees are owners of three waterfront lots in the beach parcel. While nominally some of the inland owners were defendants, for ease of discussion we refer to the owners of the inland parcel as plaintiffs and the owners of the beach parcel as defendants.

[7]The deed states that according to a certain plan the beach parcel contains 4.91 acres of upland and 5.4 acres of beach land and the inland parcel contains 10.38 acres more or less.

The judge found that the nearest point of the inland parcel lies approximately 1200 feet south of the beach parcel.

fishing, shellfishing and other recreational purposes in common with the grantors and others entitled thereto."[8]

In 1981, by a plan to which we refer as the Sandy Way plan, the trustees subdivided the beach parcel into eleven residential lots, all of which are shown to border on Sandy Way. That way runs from Atlantic Avenue toward the beach and ends in a cul-de-sac bordered by lots six through ten, which are the beach-front lots of the subdivision.

The easement relied on by the plaintiffs was created by the following reservation in the deeds to lots eight and seven of the beach subdivision, lots which were conveyed by the trustees to separate buyers in September, 1982 and April, 1983:[9]

> "Reserving to the Grantors, their successors and assigns, and others entitled thereto, as appurtenant to all of their remaining land, a ten foot pedestrian easement as shown on [the Sandy Way Plan] to and from Sandy Way to the beach and hereby conveying to the Grantee the right to use said easement in common with others entitled thereto, 5' of which is over [the relevant lot]."

After the conveyance of lot seven, the trustees owned the inland parcel and seven of the remaining lots in the beach subdivision. By June of 1984, the trustees had conveyed all of the lots in the beach subdivision to separate buyers.

The deed to each lot in the Sandy Way subdivision included the "beach use" clause contained in the Goodhue deed and a clause giving the lot owner "the right to use Sandy Way together with others lawfully entitled thereto for all purposes (except parking) for which public ways may be used in the City of Gloucester." In addition, the lots without beach frontage (lots one through five and lot eleven) were given the benefit of a ten foot wide pedestrian easement "to and from Sandy Way to the beach."

In 1990, the trustees subdivided a portion of the inland parcel

---

[8]The judge found that the documents of title in the record before him did not contain any grant of rights to the grantors of the Goodhue deed to use Wingaersheek Beach for its entire length. The plaintiffs only seek rights over the portion of the beach located within the beach parcel.

[9]Lot eight was the first lot of the Sandy Way plan conveyed by the trustees.

into two lots, and in 1992 subdivided the remaining portion into seven lots. The inland parcel has a deeded easement over Atlantic Avenue from the inland parcel to the beach parcel.[10]

The conveyances of lots in the subdivision of the inland parcel all contained the "beach use" clause, and some of those lots were conveyed with specific reference to the right to use Sandy Way and the ten-foot pedestrian path. Whether such rights were expressly mentioned in the deeds to the inland lot owners is of little consequence as any existing rights not excluded by the grantors were included in the deeds to the grantees by operation of law. G. L. c. 183, § 15.[11] The question is whether the reservation by the trustees of the pedestrian easements in the deeds to lots eight and seven of the beach subdivision reserved the rights to the beach and to Sandy Way for the trustees' remaining inland land.

In analyzing the issue, the judge first determined that the "beach use" clause in the Goodhue deed was a nullity because there was no legal basis for the grant. As "[a]n easement is an interest in land which grants to one person the right to use or enjoy land owned by another," see *Commercial Wharf E. Condominium Assoc.* v. *Waterfront Parking Corp.*, 407 Mass. 123, 133 (1990), and since the trustees were given a fee to the beach property by the Goodhue deed, the judge ruled they could not hold an easement encumbering the title to their own land. See *Goldstein* v. *Beal*, 317 Mass. 750, 754 (1945).[12] The judge then held that even if the trustees had the benefit of an ease-

---

[10]Both the inland parcel and the beach parcel, as well as numerous other parcels, are in an area, the entrance to which has two stone pillars posted as private or words to that effect. The parties stipulated that the plan depicts "a structure located just North of the pillars which is in fact a guard house that is generally occupied by security personnel during the summer months for the purpose of limiting entry to residents and guests." .

[11]General Laws c. 183, § 15, provides: "In a conveyance of real estate all rights, easements, privileges and appurtenances belonging to the granted estate shall be included in the conveyance, unless the contrary shall be stated in the deed, and it shall be unnecessary to enumerate or mention them either generally or specifically."

[12]We need not reach the question of the extinguishment of the "beach use" grant in the view we take of the case. We note, however, as the plaintiffs point out, the Goodhue grantors held a mortgage on the trustees' land at the time of the reservation. Since the mortgage prevented a unity of title, the "beach use" easement probably was not extinguished at least as to many, if not all, of the

ment in the beach, the effect of their failure to reserve that ease-
ment when they conveyed the beachfront lots meant that they
no longer held such rights and were unable to grant them to the
owners of the inland lots. He applied a similar analysis to Sandy
Way. Pointing to G. L. c. 183, § 58, he noted that the fee title
had passed to each of the lots fronting on that way. The trustees,
having failed to reserve any rights in the way, were unable to
convey any to the inland lot owners.

Although the trustees had not reserved rights in the beach
and in Sandy Way, the judge found that "the trustees reserved
their rights in the pedestrian easement with the intention that it
would be available for the owner of the Inland Parcel or for
various owners of lots to be later created." He determined,
however, that the reserved easement was extinguished because
the inland lot owners had "no rights on either end of that ease-
ment area."[13]

Our analysis differs. We begin with the reservation of the
pedestrian easement. The judge correctly concluded that the
pedestrian easement was for the benefit of the inland parcel as
well as for the beach subdivision. The reservation by the trustees
in the deeds to lots eight and seven of the beach subdivision
stated that the pedestrian easement was "appurtenant to *all* of
their remaining land" (emphasis supplied). Even in the absence
of such language, "[a]n easement is to be interpreted as avail-
able for use by the whole of the dominant tenement existing at
the time of its creation." *Pion* v. *Dwight*, 11 Mass. App. Ct.
406, 410 (1981). The servient estate need not be adjacent to the
dominant. *Jones* v. *Stevens*, 276 Mass. 318, 325 (1931).

While the judge stated that he recognized "the principle that
an easement carries with it all rights reasonably necessary for
the full enjoyment of that easement," he found it "inequitable

lots. See *Mt. Holyoke Realty Corp.* v. *Holyoke Realty Corp.*, 284 Mass. 100,
107-108 (1933).

Although the judge ruled that the trustees did not have the right to include
the "beach use" easement in the deeds to lots in the inland parcel, he found
that the lots without water frontage had the benefit of the "beach use" easement of
the "beach use" easement under a theory of a common scheme.

[13]Because of our construction of the reserved easement, we also need not
reach the question whether the judge was correct in his analysis of what
would extinguish the reservation.

to now impose a wholly separate easement where the grantors failed to take appropriate steps to protect their interests." The judge did not explain or support that statement.[14]

Of course, the trustees should have stated clearly that they were reserving rights to the beach and to Sandy Way. As pointed out by the plaintiffs, however, in all cases where the court is considering whether additional rights are incidental or reasonably necessary to the enjoyment of an easement by grant, careful drafting would have avoided the problem and rendered unnecessary the determination of what additional rights, if any, are included in the grant.

As stated in *Queler* v. *Skowron*, 438 Mass. 304, 311 (2002):

> "It is well established that [d]eeds should be construed as to give effect to the intent of the parties, unless inconsistent with some law or repugnant to the terms of the grant. The intent of the parties is gleaned from the words used, interpreted in the light of the material circumstances and pertinent facts known to them at the time [the deed] was executed." (Internal quotation marks and citations omitted.)

That the right to use the beach for their inland parcel was important to the trustees is obvious, as such rights, or their absence, directly affected the value of their inland land. Indeed, our cases construing grants of easements involving beaches reflect the significance of such rights. In *Anderson* v. *De Vries*, 326 Mass. 127 (1950), the deeds to inland lot owners gave as appurtenant to their lots "a right of way to the beach." No rights to the beach were specified. The servient estate owners argued that whatever right of way the lot owners had to the

---

[14]There was no evidence of any inequity in any of the documents or in the stipulation. It appears that the judge based his finding or ruling entirely on the failure of the trustees to include reservations of rights to Sandy Way and the beach in their deeds. If the determination of inequity is a finding of fact, it is unsupported by the record and is clearly erroneous. If it is a legal conclusion based on construction of the documents, it does not comport with the law of our cases. Accordingly, we need not reach the question left open in *Rapp* v. *Barry*, 398 Mass. 1004, 1004 n.3 (1986), namely, whether documentary evidence is excluded from the "clearly erroneous" standard of Mass.R.Civ.P. 52(a), 365 Mass. 816 (1974). Compare *Meschi* v. *Iverson*, 60 Mass. App. Ct. 678, 681 n.7 (2004).

beach, they had no rights beyond the high water mark, and they had no rights beyond the width of the way. The Supreme Judicial Court rejected their position:

> "In the instant case, we are dealing with a seashore resort where residents of a summer colony are given access to the beach. A right of way which would not permit them to travel seaward beyond the high water mark would not furnish access to the water for bathing and swimming and such a way would be worthless to them. It would be inconsistent with the manifest intention of the parties if these deeds and instruments were so construed as to deprive these owners of [inland lots] from reaching the water. . . . The way to the beach carried with it the right to use the beach for the purposes for which the way was obviously intended."

*Id.* at 133-134.

In the present case the manifest intention of the trustees is even clearer than in the *Anderson* case. In all the deeds in the beach subdivision the grant of the "beach use" clause contained the words "together with the grantors." The intent on the part of the grantors to retain such rights is evident whether or not the retention was effective. See note 12, *supra,* and accompanying text.

In another case, *Rice* v. *Vineyard Grove Co.,* 270 Mass. 81, 86-87 (1930), the Supreme Judicial Court, recognizing the importance of beach rights, held that the trial judge properly construed a grant of "use of all the beach in front of the . . . lot . . . for bathing purposes only," as including as incidental thereto "the privilege of going to and from [the lot owner's] premises over the intervening strip of bluff and beach upland belonging to the respondent."

Both of these cases reflect the well-established principle[15] that "[w]hen an easement or other property right is created, every right necessary for its enjoyment is included by implication." *Anderson,* 326 Mass. at 134, quoting from *Sulli-*

---

[15]Section 2.15 of the Restatement (Third) of Property, Servitudes (2000), points out, in comment a, that the "rule that conveyances include those rights necessary to make use of the property conveyed can be traced back in the common law at least as far as the 13th century."

*van* v. *Donohoe*, 287 Mass. 265, 267 (1934). See Restatement (Third) of Property, Servitudes § 2.15 comment b (2000), stating: "A conveyance of an easement will include a right of access to the easement. The implied rights necessary to enjoy . . . easements are often called secondary easements."

For reasons similar to our discussion construing the reservation of the pedestrian easement "to the beach" as including beach rights, we construe that reservation as also including the right of pedestrian passage over Sandy Way.

The judgment is reversed and the matter is remanded to the Land Court to issue a declaration of rights consistent with this opinion.

*So ordered.*