**CITY OF REVERE and Surf Site Developmemt, LLC, Plaintiffs,**

v.

**BOSTON/LOGAN AIRPORT ASSOCIATES, LLC, Defendant.**

**No. CIV.A.03–10280–NMG.**

United States District Court, D. Massachusetts.

Dec. 7, 2005.

Peter A. Brown, D'Ambrosio Law Office, Revere, for Plaintiff.

Paul Capizzi, Office of the City Solicitor, City Hall, Revere, for Defendant.

Gennaro D'Ambrosio, D'Ambrosio Law Offices, Revere, for Plaintiff.

Dennis L. Galvin, D'Ambrosio Law Offices, Revere, for Surf Site Development, LLC, Consolidated Plaintiff.

Robert A. Marra, Jr., Law Office of Robert A. Marra, Jr., Tewsksbury, for City of Revere, Counter Defendant.

## MEMORANDUM & ORDER

GORTON, District Judge.

This case involves a dispute over a parking easement in Revere, Massachusetts. The easement burdens property currently owned by plaintiff, Surf Site Development, LLC ("Surf Site"), which purchased it from co-plaintiff, the City of Revere ("the City"). It is undisputed that the parking easement at one time benefited property that is currently owned by defendant, Boston/Logan Airport Associates ("Boston/Logan"), a private organization with no connection to the international airport of the same name. The parties' present dispute relates to whether that easement continues to benefit Boston/Logan or whether it was extinguished by merger.

## I. *Factual Background*

Two parcels of land are involved in this controversy. The parcel burdened by the easement (the servient estate) is located on Ocean Avenue in the City of Revere ("the Ocean Avenue Property"). The parcel benefited by the easement (the dominant estate) is located on Revere Beach Boulevard ("the Boulevard Property"). The two properties are across the street from one another.

In the Fall of 1997, the Claremont Company, Inc. ("Claremont"), an entity unrelated to the parties in this case, bought the Boulevard Property from another party subject to its obtaining approval to build a hotel on that property. A few months later, an affiliate of Claremont ("the Affiliate") obtained a variance from the City which permitted it to construct, *inter alia*, a hotel on the Boulevard Property with exclusive parking rights on the Ocean Avenue Property across the street. The City then conveyed the Ocean Avenue Property to the Affiliate.

In September 1998, the Affiliate agreed to sell the Ocean Avenue Property to Red Roof Inns, Inc. ("Red Roof"). That agreement provided that Red Roof's rights in the Ocean Avenue Property were subject to a parking easement for the benefit of the owner of the Boulevard Property ("the Easement"). When the Affiliate conveyed title to the Ocean Avenue Property to Red Roof on December 15, 1998, Red Roof thereby assumed an obligation under the Easement to the owner of the Boulevard Property, which was, at that time, owned by Surf Club Associates Limited Partnership ("Surf Club").

On January 20, 1999, Boston/Logan purchased the Boulevard Property from Surf Club with the intention of developing and operating a hotel on the site. As a result of that purchase, Boston/Logan also acquired from Surf Club rights in the Easement burdening the Ocean Avenue Property owned by Red Roof and located across the street.

During 1999, Boston/Logan entered into discussions with Red Roof to purchase the Ocean Avenue Property. On December 28, 1999, Red Roof, Boston/Logan and the City of Revere entered into a Land Disposition Agreement ("LDA") which contemplated Boston/Logan's purchase of the Ocean Avenue Property from Red Roof and provided, *inter alia*, that unless Boston/Logan met, in a timely manner, certain construction obligations, the Ocean Avenue Property would revert to the City. The LDA further specified that in the

event the Ocean Avenue Property was reconveyed to the City, the City would nonetheless "recognize the validity of the [Easement] and [would not] interfere with [Boston/Logan's] rights ... to park on the Property" pursuant to the Easement.

On December 29, 1999, Red Roof deeded the Ocean Avenue Property to Boston/Logan. Both the deed and the LDA were recorded at the Suffolk County Registry of Deeds in January of 2000. Because Boston/Logan thereafter failed to satisfy the construction obligations set forth in the LDA, the Ocean Avenue Property reverted to the City in January, 2001. A provision of the deed reconveying the property specified that it was "[s]ubject to" the Easement at issue in this case.

In response to a public request for proposal ("RFP") to purchase and develop the Ocean Avenue Property, Surf Site acquired that property from the City on October 16, 2003. The City's RFP noted that there were "two parking easements which encumber the property", about which the City was considering "legal action to contest". The City "ma[de] no representation about the outcome" of any lawsuit. Bidders were permitted to submit alternative proposals for the Ocean Avenue Property: one with and one without the encumbrance of the parking easements. Surf Site's eventual acquisition of the Ocean Avenue Property was expressly subject to existing parking easements. [See "Schematic" attached to this Memorandum & Order.]

## II. *Procedural History*

The City of Revere and Surf Site, a Massachusetts corporation, filed separate causes of action each seeking declaratory judgment that the Easement had been extinguished.

The City filed its complaint in Massachusetts Superior Court on January 14, 2003, alleging that the Easement had been extinguished as a matter of law by the doctrine of merger when Boston/Logan obtained concurrent ownership of both the dominant and servient estates on December 29, 1999. Defendant Boston/Logan, a Delaware LLC with its principal place of business in New York, removed that case to this federal district court on the basis of diversity jurisdiction. Boston/Logan answered and asserted counterclaims that the City had breached the LDA and had violated the Massachusetts Consumer Protection Act (Mass. Gen. Laws ch. 93A) ("Chapter 93A"). It seeks a declaratory judgment that the Easement is valid or, in the alternative, if extinguished, compensation by the City for the taking of its property.

Surf Site filed its complaint in the Court for declaratory judgment on November 3, 2003, alleging not only that the Easement had been extinguished under the doctrine of merger but also that 1) the Easement had not been reconstituted since its termination and 2) in any event, Boston/Logan's conduct with respect to the Easement had effectively extinguished it. The Surf Site and City of Revere actions were consolidated in February, 2004, and Boston/Logan thereafter asserted counterclaims for breach of contract and violation of Chapter 93A.

Surf Site filed a motion for summary judgment on June 30, 2005, with respect to all of its claims and shortly thereafter Boston/Logan filed a motion for partial summary judgment against both plaintiffs on its declaratory judgment claim. Both motions are opposed.

On July 8, 2005, the City filed a motion to dismiss its suit and the counterclaims against the City on the grounds of mootness and failure to state a claim. It contends that its interest in the case was

terminated when it sold the Ocean Avenue Property to Surf Site and Boston/Logan's counterclaims are no longer viable because they are either moot or legally untenable. Boston/Logan opposes the City's motion.

## III. *Motions for Summary Judgment*

### A. Standard of Review

Summary judgment is appropriate where the moving party has shown, based upon the pleadings, discovery and affidavits, "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law". Fed.R.Civ.P. 56(c).

A fact is material if it "might affect the outcome of the suit under the governing law". *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* A *genuine* issue of material fact exists where the evidence with respect to the material fact in dispute "is such that a reasonable jury could return a verdict for the nonmoving party". *Id.*

Once the moving party has satisfied its burden, the burden shifts to the non-moving party to set forth specific facts showing that there is a genuine, triable issue. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The Court must view the entire record in the light most hospitable to the non-moving party and indulge all reasonable inferences in that party's favor. *O'Connor v. Steeves*, 994 F.2d 905, 907 (1st Cir.1993). If, after viewing the record in the non-movant's favor, the Court determines that no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law, summary judgment is appropriate.

### B. Analysis

#### 1. Declaratory Judgment Claim

##### a. Doctrine of Merger

It is a long-established rule of law that easements are extinguished by the doctrine of merger when unity of title to both the dominant and servient estates vests in the same person. *York Realty, Inc. v. Williams*, 315 Mass. 287, 52 N.E.2d 686, 687 (1943); *Ritger v. Parker*, 62 Mass. 145, 147 (Mass.1851). In order for unity of title to extinguish an easement, ownership of the dominant and servient estates must be "coextensive". *Rice v. Vineyard Grove Co.*, 270 Mass. 81, 169 N.E. 664, 666 (1930). Furthermore, the doctrine of merger applies only where the relevant estates are indefeasible, "respectively equal in duration, and not liable to be again disjoined by the act of the law". *Ritger*, 62 Mass. at 147 (citation omitted). *See also Atlanta Mills v. Mason*, 120 Mass. 244, 244 (Mass. 1876) ("if a person holds one estate in severalty, and only a fractional part of the other, the easement is not extinguished").

The rationale underlying the doctrine of merger is that it would be nonsensical for an owner to have "an easement in its own estate in fee". *York Realty*, 52 N.E.2d at 687 (citation omitted). With concurrent ownership in fee of dominant and servient estates comes an "unlimited power of disposal" over those estates which is inconsistent with the existence of an enforceable easement. *Ritger*, 62 Mass. at 148.

In accordance with these principles, Massachusetts courts have recognized an exception to the merger doctrine in cases where unity of title extends merely to defeasible estates. *See, e.g., Hurley v. A'Hearn*, 338 Mass. 695, 157 N.E.2d 223 (1959) (no merger where possession was pursuant to lease); *Ritger, supra* (no merger where possessor of estates was mortgagee). There is no justification for

the merger doctrine where the owner of the dominant and servient estates lacks the degree of control over those estates that is incident to ownership in fee.

▉ In this case, Boston/Logan's ownership of the servient estate, the Ocean Avenue Property, was subject to conditions that preclude operation of the merger doctrine, and thus, the Easement at issue was not extinguished by merger. The LDA conditioned Boston/Logan's ownership of the Ocean Avenue Property on its satisfaction of various conditions in default of which the property was to revert to the City. Consequently, Boston/Logan never held a sufficiently unconditional ownership interest in the Ocean Avenue Property to activate the merger doctrine.

This conclusion is bolstered by the unambiguous language of the LDA which manifests the strenuous effort made by Boston/Logan to ensure that it would not lose the benefits of the Easement upon reconveyance of the servient estate. If Boston/Logan had title in fee to the Ocean Avenue Property, it would not have needed to be so concerned about losing the benefit of the Easement upon reconveyance.

Surf Site argues that parties cannot avoid the merger doctrine through contract, relying on a Washington State case, *Schlager v. Bellport*, 118 Wash.App. 536, 76 P.3d 778 (2003), but its reliance on *Schlager* is misplaced. In that case, a contractual covenant designed to benefit a particular parcel was extinguished when the servient and dominant estates came under simultaneous ownership. As a result, the court disallowed a subsequent owner of the previously dominant parcel from enforcing the covenant, explaining that

> [w]hen the burdens and the benefits [of a covenant or servitude] are united in a single person, or group of persons, the

servitude ceases to serve any function. Because no one else has an interest in enforcing the servitude, the servitude terminates.

76 P.3d at 780 (citation omitted). The decision in *Schlager* was in no way related to the fact that the covenant was created by contract. Rather, the restriction was held to be unenforceable because all of the elements of the merger doctrine had been satisfied.

In contrast, in this case the elements of merger have not all been satisfied because Boston/Logan never held a sufficient interest in the Ocean Avenue Property to prompt operation of the merger doctrine. Unlike the situation described in *Schlager*, the Easement in this case continued "to serve [a] function" because Boston/Logan's ownership of the servient estate was not unconditional.

### b. Reservation

Even if this Court were to determine that Boston/Logan's concurrent ownership of the Ocean Avenue Property and Boulevard Property operated to extinguish the Easement, it would nonetheless conclude that when Boston/Logan reconveyed the Ocean Avenue Property to the City, it retained the Easement by express reservation.

▉ "[E]asement rights arise from the intention of the parties to create them, as shown by the language of the deed and the circumstances surrounding its execution". *Reagan v. Brissey*, 64 Mass.App.Ct. 154, 832 N.E.2d 659, 663 (2005) (citing *Carroll v. Hinchley*, 316 Mass. 724, 56 N.E.2d 608, 611 (1944)). Where an easement has been extinguished by merger, "it must be created anew by express grant, by reservation, or by implication". *Cheever v. Graves*, 32 Mass.App.Ct. 601, 592 N.E.2d 758, 762 (1992) (citations omitted).

Where unity of title in two parcels is severed by a conveyance of one parcel, the grantor may reserve an easement in the conveyed parcel for his or her benefit. *See Murphy v. Olsen,* 63 Mass. App.Ct. 417, 826 N.E.2d 249 (2005). In this case, the unambiguous language of the LDA as well as the deed from Boston/Logan to the City make it clear that the parties intended that Boston/Logan was to retain the benefit of the Easement in the Ocean Boulevard Property upon reconveyance. Thus, even if the Easement was extinguished by merger, Boston/Logan recreated it by reservation when it reconveyed the Ocean Avenue Property to the City.

The LDA contains a provision entitled "Recognition of Easement" in which the City

agree[d] that in the event that the Property on Ocean Avenue is reconveyed or otherwise reverts to the [City], the [City] shall recognize the validity of the Easements and shall not interfere with [Boston/Logan's] rights ... to park on the Property pursuant to terms and conditions of the Easements.

That language clearly demonstrates the parties' intent that the Easement was to continue upon reconveyance.

Furthermore, the language in the deed reconveying the Ocean Avenue Property to the City, which specified that the property was being conveyed "[s]ubject to" the Easement at issue, is sufficient as a matter of law to reserve the Easement for Boston/Logan. *See Barnside v. Coughlin,* 422 Mass. 233, 661 N.E.2d 929, 930 (1996) (affirming Land Court's summary judgment decision that mortgage purporting to be "[s]ubject to proposed right of way" was sufficient to reserve to grantor the right to create an easement); *Texon, Inc. v. Holyoke Machine Co.,* 8 Mass.App.Ct. 363, 394 N.E.2d 976, 978 (1979) (holding that deed purporting to be "subject to rights of the grantor (Holyoke) to maintain steam and electrical conduits" was sufficient to create an easement).

Surf Site argues that the parties could not have intended that the Easement was to be expressly reserved upon severance of title because they never contemplated that the Easement would be extinguished by merger. This argument substitutes semantics for common sense. The fact that the parties never contemplated the extinguishment of the Easement does not preclude an express reservation in light of the substantial evidence of the parties' intent that the Easement should continue after reconveyance.

In addition to its other arguments, Surf Site asserts that the Easement was not recreated because it was not "reasonably necessary" and because Boston/Logan failed to establish its "prior use". Both of those requirements apply to easements established by implication. *See, e.g., Krinsky v. Hoffman,* 326 Mass. 683, 95 N.E.2d 172, 175 (1951) (citing cases). Because the Court finds that the Easement in this case was created by express, not implied, reservation, the doctrine of implied easements is inapposite.

Finally, Surf Site's contention that Boston/Logan abandoned the Easement is without merit. Loss of an easement by abandonment requires unambiguous evidence of an unequivocal intent to abandon the easement or else a purpose that is inconsistent with its continued existence. *First Nat'l Bank of Boston v. Konner,* 373 Mass. 463, 367 N.E.2d 1174, 1177 (1977) (citation omitted). Mere nonuse, no matter how long it persists, is insufficient by itself to prove abandonment. *Id.* Evidence that Boston/Logan has not yet used the Easement for its specified purpose does not establish abandonment.

## 2. Breach of Contract

Surf Site contends that it is entitled to summary judgment on the breach of contract counterclaim because it was not a party to the LDA that Boston/Logan alleges it breached. Furthermore, Surf Site asserts that it never expressly or impliedly assumed the City's obligations under the LDA.

In response, Boston/Logan argues that Surf Site is subject to the LDA because the provisions of that agreement were expressly

> binding upon and [would] inure to the benefit of the successors and assigns of [Boston/Logan] and the public body or bodies succeeding to the interests of the [City of Revere], and to any subsequent grantees of any portion of the [Ocean Avenue] Property.

Boston/Logan states that, in addition, Surf Site had notice of the LDA's terms because the agreement was recorded at the Suffolk County Registry of Deeds.

■■■ As a general matter, contracts do not bind nonparties. *See Equal Employment Opportunity Comm'n v. Waffle House, Inc.*, 534 U.S. 279, 294, 122 S.Ct. 754, 151 L.Ed.2d 755 (2002). Moreover, successors in interest to contracting parties generally are not bound by contracts which they have not expressly or impliedly assumed. *See John Wiley & Sons, Inc. v. Livingston*, 376 U.S. 543, 550, 84 S.Ct. 909, 11 L.Ed.2d 898 (1964).

There is no evidence in this case that Surf Site expressly assumed the obligations of the LDA. Boston/Logan suggests that because the LDA related to land and was recorded at the Registry of Deeds, Surf Site should be deemed to have impliedly assumed its terms. Considered within the parameters of summary judgment review, the Court concludes that there is a genuine issue of material fact concerning whether or not Surf Site impliedly assumed the obligations of the LDA. Accordingly, summary judgment will be denied on the breach of contract claim.

## 3. The Consumer Protection Act

Chapter 93A provides a private cause of action against "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce". To prevail on a Chapter 93A claim, a party

> must show that the defendant's actions fell "within at least the penumbra of some common-law, statutory, or other established concept of unfairness," or were "immoral, unethical, oppressive or unscrupulous," and resulted in "substantial injury ... to competitors or other business [persons]."

*Boyle v. Int'l Truck & Engine Corp.*, 369 F.3d 9, 15 (1st Cir.2004) (citations omitted).

Chapter 93A claims may be resolved on summary judgment "provided that there is no genuine issue of material fact" or that "the opposing party has not been adversely affected". *Chub v. Elec. Ins. Co.*, 17 Mass.App.Ct. 61, 455 N.E.2d 646, 646 (1983). Surf Site contends that it cannot be liable under Chapter 93A because it was not bound by the terms of, and therefore did not breach, the LDA. Boston/Logan responds that Surf Site was, indeed, bound by the LDA and that its conduct in contravention of both the terms of that agreement and of the Easement subject to which Surf Site acquired the Ocean Avenue Property constitute a violation of the Consumer Protection Act.

■■■ While liability under Chapter 93A may be imposed even where the defendant's conduct was not unlawful, *see Schubach v. Household Fin. Corp.*, 375 Mass. 133, 376 N.E.2d 140, 142 (1978), courts have rarely done so. In the context of an alleged breach of contract, a simple, or

even intentional, breach is insufficient in itself to constitute an unfair or deceptive trade practice under Chapter 93A. *See Ahern v. Scholz*, 85 F.3d 774, 798 (1st Cir.1996); *Mass. Employers Ins. Exch. v. Propac–Mass.*, 420 Mass. 39, 648 N.E.2d 435, 438 (1995); *Madan v. Royal Indem. Co.*, 26 Mass.App.Ct. 756, 532 N.E.2d 1214, 1217 (1989). Rather, the breach must be both knowing and intended to secure "unbargained-for benefits" to the detriment of the other party. *NASCO, Inc. v. Pub. Storage, Inc.*, 29 F.3d 28, 34 (1st Cir.1994). The breaching party's conduct must exceed the level of mere self-interest, *see Atkinson v. Rosenthal*, 33 Mass.App.Ct. 219, 598 N.E.2d 666, 670 (1992), rising instead "to the level of 'commercial extortion' or a similar degree of culpable conduct". *Commercial Union Ins. Co. v. Seven Provinces Ins. Co., Ltd.*, 217 F.3d 33, 40 (1st Cir.2000) (quoting *Anthony's Pier Four, Inc. v. HBC Assocs.*, 411 Mass. 451, 583 N.E.2d 806, 821 (1991)). *See also Mass. Employers Ins. Exch.*, 648 N.E.2d at 438.

▋ After considering the materials submitted by the parties in a light most favorable to Boston/Logan, the Court concludes that Surf Site's conduct, even if it amounted to a breach of the LDA and/or the terms of its deed to the Ocean Avenue Property, does not, as a matter of law, constitute a violation of the Massachusetts Consumer Protection Act. The Court will, therefore, grant summary judgment to Surf Site on the Chapter 93A claim against it. Surf Site's conduct, even if deliberately contrary to the terms of the LDA or the Easement, lacks "an extortionate quality that gives it the rancid flavor of unfairness". *Atkinson*, 598 N.E.2d at 670.

## IV. *Motion to Dismiss*

The Court now turns its attention to the City's motion to dismiss its own suit and the counterclaims against it.

## A. Mootness

Federal courts must dismiss a case as moot where "the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome". *Powell v. McCormack*, 395 U.S. 486, 496, 89 S.Ct. 1944, 23 L.Ed.2d 491 (1969) (citation omitted). "Where one of the several issues presented becomes moot, the remaining live issues supply the constitutional requirement of a case or controversy", however. *Id.* at 497, 89 S.Ct. 1944 (citations omitted). In this case, because the City's legal interest has not vanished despite its conveyance of the Ocean Avenue Property, the suit will not be dismissed.

▋ Although the City contends that its conveyance of the Ocean Avenue Property to Surf Site deprives it of any further legal interest in the property, Boston/Logan responds persuasively that the City has retained an interest in the property by virtue of a development agreement between Surf Site and the City which obligates Surf Site to reconvey the property if it fails to meet certain development milestones. Because the City retains a reversionary interest in the Ocean Avenue Property, it continues to have a stake in the viability of the Easement. Consequently, the declaratory judgment action is not moot despite the City's conveyance of title.

Furthermore, even if the City had wholly divested itself of all interest in the Ocean Avenue Property and any easement burdening that property, a live case or controversy persists by virtue of the pending counterclaims asserted by Boston/Logan.

## B. Failure to State a Claim

### 1. Standard of Review

A court may not dismiss a complaint for failure to state a claim under Fed.R.Civ.P.

12(b)(6) "unless it appears, beyond doubt, that the [p]laintiff can prove no set of facts in support of his claim which would entitle him to relief." *Judge v. City of Lowell,* 160 F.3d 67, 72 (1st Cir.1998) (quoting *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). In considering the merits of a motion to dismiss, the court may look only to the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the complaint and matters of which judicial notice can be taken. *Nollet v. Justices of the Trial Court of Mass.,* 83 F.Supp.2d 204, 208 (D.Mass.2000) *aff'd,* 248 F.3d 1127 (1st Cir.2000). Although a court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor, *Langadinos v. American Airlines, Inc.,* 199 F.3d 68, 69 (1st Cir.2000), it need not credit bald assertions or unsupportable conclusions. *In re Colonial Mortgage Bankers Corp.,* 324 F.3d 12, 15 (1st Cir.2003).

### 2. Analysis

The City has challenged the validity of the counterclaims for breach of contract, violation of Chapter 93A and takings asserted by Boston/Logan. Construing the facts and all inferences therefrom in favor of Boston/Logan, this Court finds that the breach of contract and Chapter 93A counterclaims remain justiciable but that the takings claim should be dismissed.

### a. Breach of Contract

The City argues that because the Easement was extinguished by merger, it was not legally obligated to comply with the terms of the LDA which required it to recognize the validity of the Easement upon reacquisition of the Ocean Avenue Property. Because this Court has found that the Easement was not extinguished by merger, the City remains subject to the LDA, and, consequently, the Court will not dismiss the breach of contract counterclaim against the City.

### b. The Consumer Protection Act

Nor will Boston/Logan's Chapter 93A counterclaim be dismissed. In contrast to Boston/Logan's Chapter 93A claim against Surf Site, the Court finds that the counterclaim against the City is tenable based upon the particular facts alleged by Boston/Logan.

 Although the Consumer Protection Act "contains no explicit indication that governmental entities are to be liable under its provisions", *United States Leasing Corp. v. City of Chicopee,* 402 Mass. 228, 521 N.E.2d 741, 744 (1988), no court has held that municipalities are exempt from Chapter 93A claims so long as they are "acting in a business context", functioning in "trade or commerce" as that statute requires. *Park Drive Towing, Inc. v. City of Revere,* 442 Mass. 80, 809 N.E.2d 1045, 1051 (2004) (citations and internal quotation marks omitted). *See also B & R Realty Co. v. Springfield Redevelopment Auth.,* 708 F.Supp. 450 (D.Mass.1989) (holding that the City of Springfield was "potentially liable under chapter 93A"). Whether a municipality has acted in a business context

> depends on "the nature of the transaction, the character of the parties involved and [their] activities ... and whether the transaction was motivated by business reasons".

*Park Drive,* 809 N.E.2d at 1051. Where activity derives from legislative mandate, it does not constitute "trade or commerce" under Chapter 93A. *Id.* (citations omitted).

Considered within the parameters of a motion to dismiss, the circumstances of this case are consistent with a finding that the interaction between the City and Boston/Logan was commercial in nature. There is no evidence that the LDA was

executed pursuant to legislative mandate. *Cf. Bretton v. State Lottery Comm'n,* 41 Mass.App.Ct. 736, 673 N.E.2d 76 (1996) (concluding that the activities of the state lottery commission are driven by legislative mandate as opposed to business objectives).

■ In addition, considering the facts alleged by Boston/Logan in support of its counterclaim against the City, it is not incomprehensible that Boston/Logan could prove that it is entitled to relief. While it is certainly not evident at this stage that any breach of the LDA by the City was for an extortionate purpose, as is required to establish Chapter 93A liability in the breach-of-contract context (*see* discussion, *supra,* at III.B.3), Boston/Logan has alleged that the City proceeded with this litigation despite believing its position was without merit. Because a violation of Chapter 93A may be established where clearly meritless litigation has been commenced, Boston/Logan has stated a Chapter 93A claim against the City. *See Refuse & Envtl. Sys., Inc. v. Indus. Servs. of Am., Inc.* 932 F.2d 37, 43 (1st Cir.1991).

### c. Takings Clause

■ In contrast, the takings claim asserted by Boston/Logan stands on weak footing. The Takings Clause prohibits the taking of private property "for public use, without just compensation". U.S. Const. amend. V. Boston/Logan asserts that if the Easement was extinguished by merger, it should nonetheless be compensated by the City in accordance with the Takings Clause. As a legal matter, this claim is untenable. If the Easement was extinguished when Boston/Logan acquired the Ocean Avenue Property and not successfully recreated when Boston/Logan reconveyed that property to the City, then, at the time of conveyance, Boston/Logan had no interest in the Easement. It is axio-matic that there can be no taking where no private property interest exists in the first place. Consequently, Boston/Logan has failed to state a claim for taking upon which relief can be granted.

### ORDER

In accordance with the foregoing memorandum,

1) Surf Site's Motion for Summary Judgment (Docket No. 47) is, with respect to the Chapter 93A counterclaim asserted by Boston/Logan, **ALLOWED**, and is, otherwise, **DENIED**;

2) the City of Revere's Motion to Dismiss (Docket No. 51) is, with respect to the takings counterclaim asserted by Boston/Logan, **ALLOWED,** and is, otherwise, **DENIED**; and

3) Boston/Logan's Motion for Partial Summary Judgment (Docket No. 53) is **ALLOWED.**

So ordered.

### SCHEMATIC

---

#### Ocean Avenue

---

"the Ocean Avenue Property" owned by "Surf Site", formerly of the City, Boston/Logan and Red Roof [parking lot; the servient estate]

---

#### Revere Beach Boulevard

---

"the Boulevard Property" owned by Boston/Logan, formerly of "Surf Club" [hotel; the dominant estate]

---

#### Chronology

1998 Easement created in the Ocean Avenue Property for parking in favor of the Boulevard Property

1999 Boston/Logan acquires the Boulevard Property in January and, in December, acquires the Ocean Avenue Property and enters into the LDA

2001 The Ocean Avenue Property reverts to the City

2003 The City conveys the Ocean Avenue Property to Surf Site and sues Boston/Logan for declaratory judgment