CITY OF REVERE and Surf Site
Development, LLC, Plaintiffs,

v.

BOSTON/LOGAN AIRPORT
ASSOCIATES, LLC,
Defendant.

Civil Action No. 03–10280–NMG.

United States District Court,
D. Massachusetts.

July 13, 2006.

Dennis L. Galvin, Gennaro D'Ambrosio, Peter A. Brown, D'Ambrosio Law Offices, Paul Capizzi, Walter H. Porr, Jr., Office of the City Solicitor, Revere, MA, Robert J. Roughsedge, Lawson & Weitzen, LLP, Boston, MA, Robert A. Marra, Jr., Law Office of Robert A. Marra, Jr., Tewksbury, MA, for Plaintiffs.

Joel M. Sowalsky, Smith, Segel & Sowalsky, for Defendant.

## MEMORANDUM & ORDER

GORTON, District Judge.

This case involves a dispute over a parking easement in Revere, Massachusetts. A more detailed factual history is provided in this Court's Memorandum & Order of December 7, 2005. *See City of Revere v. Boston/Logan Airport Assocs., LLC,* 416 F.Supp.2d 200 (D.Mass.2005).

### I. *Factual Background*

The easement at issue (hereinafter, "the Easement" or "the Parking Easement") burdens property currently owned by plaintiff, Surf Site Development, LLC ("Surf Site"), which purchased it from co-plaintiff, the City of Revere ("the City"). Pursuant to this Court's decision entered on December 7, 2005, the Parking Easement benefits property owned by defendant-counterclaimant, Boston/Logan Airport Associates, LLC ("Boston/Logan"), a

private organization with no connection to the international airport of the same name.

Two parcels of land, located across the street from one another, are involved in this controversy. The parcel burdened by the Easement (the servient estate) is located on Ocean Avenue ("the Ocean Avenue Property"). The parcel benefited by the Easement (the dominant estate) is located on Revere Beach Boulevard ("the Boulevard Property").

The Parking Easement burdening the Ocean Avenue Property was expressly created for the benefit of the Boulevard Property in 1998. When Boston/Logan purchased the Boulevard Property in January, 1999, it thereby acquired rights in the Easement as well. Over the course of that year, Boston/Logan entered into discussions with Red Roof Inns ("Red Roof"), which then owned the Ocean Avenue Property, to purchase that parcel as well.

On December 28, 1999, Red Roof, Boston/Logan and the City of Revere entered into a Land Disposition Agreement ("LDA") which contemplated Boston/Logan's purchase of the Ocean Avenue Property from Red Roof and provided, *inter alia*, that unless Boston/Logan met, in a timely manner, certain construction obligations, the Ocean Avenue Property would revert to the City (which had originally obtained the property in satisfaction of a tax lien). The LDA further specified that in the event the Ocean Avenue Property was reconveyed to the City, the City would nonetheless "recognize the validity of the [Easement] and [would not] interfere with [Boston/Logan's] rights . . . to park on the Property" pursuant to the Easement. The provisions of the LDA were made expressly binding upon "any subsequent grantees of any portion of the Property".

The Ocean Avenue Property was deeded to Boston/Logan on December 29, 1999, and both the deed and the LDA were recorded at the Suffolk County Registry of Deeds in January of 2000. Because Boston/Logan eventually failed to satisfy the construction obligations set forth in the LDA, the Ocean Avenue Property reverted to the City in January, 2001. A provision of the deed reconveying the property specified that it was "[s]ubject to" the Easement at issue in this case. In October, 2003, Surf Site acquired the Ocean Avenue Property from the City pursuant to a public bid and its deed to the property explicitly reflected the encumbrance of the Easement.

## II. *Procedural History*

In January and November, 2003, respectively, the City and Surf Site filed separate causes of action each seeking a declaration that the Easement had been legally extinguished by operation of the merger doctrine when Boston/Logan purchased the Ocean Avenue Property. Boston/Logan asserted counterclaims against the City for breach of the LDA and violation of the Massachusetts Consumer Protection Act, Mass. Gen. Laws ch. 93A (hereinafter, "Chapter 93A"), and sought a declaratory judgment that the Easement was valid or, in the alternative, that Boston/Logan was entitled to compensation by the City for the taking of its property if the Easement had been extinguished. Boston/Logan counterclaimed against Surf Site for breach of the LDA and violation of Chapter 93A. The cases were consolidated in February, 2004.

After considering motions for summary judgment and dismissal on behalf of all three parties, the Court entered an order on December 7, 2005, that, in pertinent part, 1) declared the Easement to be valid and enforceable and 2) awarded summary judgment to Surf Site on Boston/Logan's Chapter 93A counterclaim against it. *See City of Revere, supra.* That Order dis-

posed, therefore, of plaintiffs' entire case against Boston/Logan, leaving only the pending counterclaims.

In January, 2006, the Court allowed the parties to file additional dispositive motions upon their mutual agreement that the remaining counterclaims could be disposed of as a matter of law. Now ripe for consideration are cross-motions for summary judgment of Boston/Logan, the City and Surf Site, with respect to Boston/Logan's counterclaims for breach of contract (against both the City and Surf Site) and Chapter 93A (against the City). The City has also filed a motion for leave to amend its answer to Boston/Logan's counterclaims against it and a motion to strike an affidavit submitted by Boston/Logan.

### III. *Motions for Leave to Amend Answer and to Strike Affidavit*

The Court first addresses the City's motions for leave to amend its answer and to strike Boston/Logan's affidavit because disposition of those motions bears upon the pending motions for summary judgment.

### A. *Motion for Leave to Amend Answer*

Over the opposition of counterclaimant Boston/Logan, the City has moved for leave to amend its answer by adding waiver as an affirmative defense. The City presently opposes Boston/Logan's motion for summary judgment on the ground, among others, that Boston/Logan waived its breach of contract claim when it allegedly agreed that the parties' dispute should be resolved through a declaratory judgment action. The City failed, however, to include waiver as an affirmative defense in its answer. It moved for leave to amend approximately three weeks after Boston/Logan (and the City itself) filed the pending cross-motions for summary judgment, more than six months after those

same parties filed an initial set of dispositive motions and more than two-and-a-half years after the City answered the counterclaims in this action.

 Leave to amend pleadings is to be "freely given when justice so requires", Fed.R.Civ.P. 15(a), but permission should be withheld if amendment would be "futile or reward undue delay", *Adorno v. Crowley Towing & Transp. Co.*, 443 F.3d 122, 126 (1st Cir.2006) (citation omitted). Parties desiring to amend a pleading after their opponent has moved for summary judgment must meet a higher bar than is required of those seeking amendment at an earlier stage, namely that "the proposed amendment[ ][is] supported by substantial and convincing evidence". *Id.* (citation and internal quotation marks omitted).

 In this case, the City asserts that amendment at this concededly late stage causes no prejudice to Boston/Logan and is not driven by bad faith. Boston/Logan disputes the contention that it will not be prejudiced because, as a matter of timing and procedure, it is not in a position to respond factually or legally to the newly raised affirmative defense. After considering the parties' contentions within the context of the motion's untimeliness and lack of merit, the Court will deny the City's motion for leave to amend.

### B. *Motion to Strike Affidavit*

 The City requests that the Court strike the entire affidavit of Joel Sowalsky ("Sowalsky"), an attorney retained by Boston/Logan in this matter, on the grounds that two paragraphs of his affidavit violate the "best evidence" rule. Specifically, the City argues that Sowalsky's assertions concerning his fees and time spent working on this matter are no substitute for the actual documentation of his charges and

services and that his entire affidavit should, therefore, be disregarded. Boston/Logan responds that it is inappropriate to strike Sowalsky's affidavit on such grounds because his assertions are not being offered to prove the content of his fee agreement or services rendered. Boston/Logan submits that if it should seek to present that information, as in a request for attorney's fees, for example, it will provide original documentation. The Court is persuaded by Boston/Logan and will, therefore, deny the City's motion to strike.

## IV. Cross–Motions for Summary Judgment

### A. Legal Standard

Summary judgment is appropriate where the moving party has shown, based upon the pleadings, discovery and affidavits, "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law". Fed.R.Civ.P. 56(c).

A fact is material if it "might affect the outcome of the suit under the governing law". *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* A *genuine* issue of material fact exists where the evidence with respect to the material fact in dispute "is such that a reasonable jury could return a verdict for the nonmoving party". *Id.*

Once the moving party has satisfied its burden, the burden shifts to the non-moving party to set forth specific facts showing that there is a genuine, triable issue. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The Court must view the entire record in the light most hospitable to the non-moving party and indulge all reasonable inferences in that party's favor. *O'Connor v.*

*Steeves*, 994 F.2d 905, 907 (1st Cir.1993). If, after viewing the record in the non-movant's favor, the Court determines that no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law, summary judgment is appropriate.

### B. Analysis

### 1. Breach of the LDA

To prove breach of contract under Massachusetts law, a claimant must demonstrate 1) that the parties had a contract supported by valid consideration which 2) the defendant breached thereby 3) causing damage to the claimant. *See, e.g., Michelson v. Digital Fin. Servs.*, 167 F.3d 715, 720 (1st Cir.1999) (citation omitted). The defendant may avoid liability where, among other situations, its breach followed the claimant's failure to satisfy one of its own material obligations under the agreement. *See, e.g., Singarella v. City of Boston*, 342 Mass. 385, 173 N.E.2d 290, 291 (Mass.1961); Restatement (Second) of Contracts § 237; 14 Richard A. Lord, *Williston on Contracts* § 43 (4th ed.).

In this case, the City contends that it is not liable for breach on the grounds that Boston/Logan 1) failed to perform its obligations under the LDA, that is by not constructing certain hotel facilities on the Boulevard and Ocean Avenue Properties within a particular time frame, and 2) has not suffered legally cognizable damages from the City's alleged breach. On its behalf, Surf Site agrees with the City that Boston/Logan has suffered no damages from the alleged breach and contends, in addition, that Surf Site could not have breached the LDA because it never assumed the obligations of that agreement. Boston/Logan concedes that its monetary

losses resulting from the alleged breach are limited to its litigation expenses.

Boston/Logan makes a persuasive argument that it did not breach the LDA by failing to meet the construction obligations set forth therein. The LDA expressly contemplated that, should Boston/Logan fail to commence construction in a timely manner, the Ocean Avenue Property would revert to the City, which it did. Consequently, Boston/Logan effectively performed its obligations under the terms of that agreement when it reconveyed the property to the City. Furthermore, evidence of the City's breach is apparent. The City expressly covenanted to "recognize the validity of the [Easement] and ... not interfere with [Boston/Logan's] rights [provided by the Easement]". By notifying Boston/Logan that it considered the Easement extinguished and then commencing its declaratory judgment suit, the City reneged on its promise.

The fact that Boston/Logan's damages from the alleged breach are limited to attorney's fees, however, is problematic because Massachusetts courts generally adhere to the "American rule" which makes parties responsible for their own attorney's fees regardless of who prevails. *See Police Comm'r of Boston v. Gows,* 429 Mass. 14, 705 N.E.2d 1126, 1128 (Mass. 1999) (citing *Preferred Mut. Ins. Co. v. Gamache,* 426 Mass. 93, 686 N.E.2d 989 (Mass.1997)). That rule does not apply where attorney's fees are 1) permitted by statute, 2) provided by contract or stipulation of the parties or 3) recognized as the measure of compensable damages. *See Fuss v. Fuss,* 372 Mass. 64, 368 N.E.2d 271, 274 (Mass.1977) (citation omitted). For example, insureds who establish their insurer's duty to defend are entitled to attorney's fees as damages. *See Rubenstein v. Royal Ins. Co. of Am.,* 429 Mass. 355, 708 N.E.2d 639 (Mass.1999). Fur-

thermore, Massachusetts courts award attorney's fees in "rare and egregious" situations where a party persists in litigious conduct that is frivolous, unreasonably vexatious or which constitutes contempt of court, *Gows,* 705 N.E.2d at 1128–29, or where a plaintiff is compelled to sue or defend against a third party as a result of a defendant's tortious conduct, *Coady v. Wellfleet Marine Corp.,* 62 Mass.App.Ct. 237, 816 N.E.2d 124, 130 (Mass.App.Ct. 2004).

Here, there is no statute, contractual provision or case directly applicable to the parties' dispute. Boston/Logan contends, however, that its attorney's fees should be treated as compensable contract damages on the ground that the breach of the LDA was functionally equivalent to a breach of a covenant not to sue. With no Massachusetts case law apposite to that contention, Boston/Logan cites three cases from other jurisdictions, namely *Anchor Motor Freight, Inc. v. International Brotherhood of Teamsters, Local Union No. 377,* 700 F.2d 1067 (6th Cir.1983), *Artvale, Inc. v. Rugby Fabrics Corp.,* 363 F.2d 1002 (2d Cir.1966), and *Widener v. Arco Oil & Gas Co.,* 717 F.Supp. 1211 (N.D.Tex.1989).

Although Boston/Logan's argument is intriguing, it is ultimately unconvincing. Treating the City's promise to recognize the Easement as a covenant not to sue would strain the unambiguous language of the contract and inappropriately broaden the limited exceptions to the presumption against awards of attorney's fees. In contrast to the cases relied upon by Boston/Logan, the contractual provision at issue expresses no indication that the parties intended it to function as a covenant not to sue. That lack of intent, in combination with the reluctance of Massachusetts courts to award attorney's fees outside of rare, clearly defined situations, is fatal to Boston/Logan's breach of contract

claims against both counterclaim-defendants.

### 2. *Chapter 93A*

While Boston/Logan's petition for attorney's fees as compensatory damages lacks merit, it makes a more compelling, although ultimately unavailing, argument that it is entitled to recovery of such fees under Chapter 93A, § 11. That statute authorizes suits between businesses for injuries caused by "unfair or deceptive act[s] or practice[s]".

### a. *Municipal Liability*

A municipality is subject to liability under Chapter 93A where it is "acting in a business context", which is determined by consideration of "the nature of the transaction, the character of the parties involved and [their] activities . . . and whether the transaction was motivated by business reasons". *Park Drive Towing, Inc. v. City of Revere*, 442 Mass. 80, 809 N.E.2d 1045, 1051 (Mass.2004) (citations and internal quotation marks omitted). Municipal liability under Chapter 93A is not available where the city's conduct is "motivated by legislative mandate". *Id.* (citation omitted).

When this Court denied the City's motion to dismiss the Chapter 93A counterclaim at an earlier stage of the proceedings, it stated that the facts alleged by Boston/Logan were "consistent with a finding that the interaction between the City and Boston/Logan was commercial in nature". *City of Revere*, 416 F.Supp.2d at 210. Now, the City contends that its conduct was regulatory rather than commercial in nature. It notes that the property burdened by the Easement (the Ocean Avenue Property) was initially obtained through a tax title taking and that conveyances of the property between private parties since that time have always involved the City's participation. The City maintains that its conduct with respect to the Ocean Avenue Property derives from Mass. Gen. Laws ch. 30B, § 16, which sets forth the process for municipal dispositions of real property and states that the governmental body "shall specify restrictions, if any, that it will place on the subsequent use of the property" to be conveyed.

This issue is a close one. On the one hand, no Massachusetts court appears, as of yet, to have found a municipality liable under Chapter 93A. *See Park Drive Towing*, 809 N.E.2d at 1050. On the other hand, the circumstances of this case are distinguishable from the facts presented in cases for which liability was denied. For example, the SJC offered two reasons for not imposing Chapter 93A liability upon the City in *Park Drive Towing* (in which the City of Revere was also a party), the first being that the City lacked fault and the second being that its conduct was not commercial. 809 N.E.2d at 1050–51. With respect to the latter point, the SJC noted that the City's management of its authorized list of towing companies was

> merely incidental to its primary function of maintaining public order in the streets, and the regulation of illegally parked vehicles has been assigned to the city by statute.

*Id.* at 1051 (citing *All Seasons Servs., Inc. v. Comm'r of Health & Hosps. of Boston*, 416 Mass. 269, 620 N.E.2d 778, 780 (Mass. 1993), and Mass. Gen. Laws ch. 40, § 21). Here, in contrast, the City's fault is more explicit and its disposition of realty, though authorized by statute, can hardly be said to constitute a "primary function".

Similarly, this case differs from *All Seasons, supra, Lafayette Place Associates v. Boston Redevelopment Authority*, 427 Mass. 509, 694 N.E.2d 820 (Mass.1998), and *Bretton v. State Lottery Commission,*

41 Mass.App.Ct. 736, 673 N.E.2d 76 (Mass. App.Ct.1996). The SJC in the *All Seasons* case concluded that Boston City Hospital's selection of a food services vendor did not take place in a business context because the hospital "did not seek to profit" from the selection of the vendor which was "merely incidental to [its] primary function of providing medical services". 620 N.E.2d at 780. Conduct of the Boston Redevelopment Authority ("the BRA") with respect to a land contract was also deemed to be non-commercial because there was no doubt that the development activity at issue was "wholly in pursuit of" a clear legislative mandate to redevelop blighted urban areas. *Lafayette Place Assocs.*, 694 N.E.2d at 836. Similar to *Park Drive Towing*, the SJC concluded that the contract at issue in *Lafayette* had not been breached. *Id.* Finally, the State Lottery Commission was not considered a business actor in light of the legislative mandate to conduct a state lottery and the very nature of the lottery which is generally prohibited by law and allowed to function only in a narrow and highly regulated environment. *Bretton*, 673 N.E.2d at 79.

 Here, the mere fact that the City's disposition of the Ocean Avenue Property was authorized by statute does not compel a determination that its conduct was "motivated by legislative mandate". To the contrary, the City's desire to unburden the Ocean Avenue Property from the Easement appears to have been motivated primarily by the potential for a more profitable conveyance of the property. Furthermore, while disposition of municipal realty is statutorily permitted, it would be difficult to describe it as a "primary" government function. Consequently, the Court concludes that the City's actions in this case occurred within a business context.

### b. *Unfair Conduct*

 In addition to proving that the City is subject to Chapter 93A as a person engaged in trade or commerce, Boston/Logan must also show that the City's conduct was

'within at least the penumbra of some common-law, statutory, or other established concept of unfairness,' or was 'immoral, unethical, oppressive or unscrupulous,' and resulted in 'substantial injury ... to competitors or other business[persons].'

*Boyle v. Int'l Truck & Engine Corp.*, 369 F.3d 9, 15 (1st Cir.2004) (citations omitted). A willful breach of contract for the purpose of securing "unbargained-for benefits" gives rise to liability under Chapter 93A. *NASCO, Inc. v. Pub. Storage, Inc.*, 29 F.3d 28, 34 (1st Cir.1994). *See also Anthony's Pier Four, Inc. v. HBC Assocs.*, 411 Mass. 451, 583 N.E.2d 806, 821 (Mass. 1991) (citations omitted); *Atkinson v. Rosenthal*, 33 Mass.App.Ct. 219, 598 N.E.2d 666, 670 (Mass.App.Ct.1992) (summarizing rule that, in order for a breach of contract to constitute an unfair act under Chapter 93A, the breach must be used "as a lever to obtain advantage for the party committing the breach in relation to the other party; i.e., the breach of contract has an extortionate quality that gives it the rancid flavor of unfairness").

 Boston/Logan contends that the City violated Chapter 93A by challenging the validity of the Easement in willful disregard of the express terms of the LDA and of the deed to the servient estate. Letters written by the Mayor and City Solicitor in late 2000 explicitly acknowledged the Easement and asserted that the City would recognize it. By February, 2002, however, the City had changed its position with the Mayor notifying Boston/Logan that the City considered the

Easement extinguished. The City filed its declaratory judgment suit one year later.

Boston/Logan's Chapter 93A claim against the City is essentially an abuse of process claim. Boston/Logan asserts that the City filed suit in knowing contravention of its legal obligations and without reasonable grounds for success in order to obtain an unbargained-for benefit, namely, the increased value of the Ocean Avenue Property unencumbered by the Easement. Furthermore, the City is alleged to have acted extortionately by agreeing to cooperate with Surf Site, the buyer of the servient estate from the City, in any litigation by Surf Site against Boston/Logan.

The City disputes the contention that its conduct was extortionate or unfair. It asserts that it challenged the Easement in order to promote development of the servient estate and provides evidence that independent legal counsel supported the position that the Easement had been extinguished by merger. Furthermore, the City contends that Boston/Logan has failed to sustain "substantial injury" on account of the City's actions. Similar to its breach of contract claim, Boston/Logan's "damages" for the alleged Chapter 93A violation are limited to attorney's fees.

The City's decision to seek a declaratory judgment despite 1) having executed a contract in which it expressly promised to acknowledge the validity of the Easement and 2) having accepted a reconveyance of the Ocean Avenue Property "subject to" that Easement, manifested a serious disregard for the rights of Boston/Logan. Nevertheless, the basis for the declaratory judgment suit was not groundless and there is no evidence that the City commenced the suit for an ulterior, extortionate purpose. *See, e.g., Quaker State Oil Refining Corp. v. Garrity Oil Co., Inc.*, 884 F.2d 1510, 1513–14 (1st Cir.1989) (affirming a district court's decision to deny Chapter 93A liability against a party where its claims, though ultimately unsuccessful, were not groundless and where there was "no indication that [that party's] actions were motivated by any pernicious purpose collateral to winning the suit and ensuring payment of damages sustained"); *Cohen v. Hurley*, 20 Mass.App.Ct. 439, 480 N.E.2d 658, 660 (Mass.App.Ct.1985) (stating that the commencement of litigation constitutes an "ulterior purpose" only where it is designed to coercively obtain "a collateral advantage, not properly involved in the proceeding itself ... by the use of the process as a threat or a club") (quoting Prosser & Keeton, *Torts* § 121 (1984)) (internal quotation marks omitted). *See also Broadway Mgmt. Servs. Ltd. v. Cullinet Software, Inc.*, 652 F.Supp. 1501, 1503 (D.Mass.1987) ("[N]o Massachusetts case has held that an intention to cause a party to expend substantial time and money to defend against the claims in a suit constitutes an 'ulterior motive'."). Consequently, Boston/Logan has failed to meet its legal burden of proof on the Chapter 93A claim.

## ORDER

In accordance with the foregoing,

1) the City of Revere's Motions to Strike the Affidavit of Joel Sowalsky (Docket No. 92) and for Leave to Amend its Answer (Docket No. 96) are **DENIED,** but its Motion for Summary Judgment (Docket No. 73) is **ALLOWED;**

2) Surf Site's Motion for Summary Judgment (Docket No. 77) is **ALLOWED;** and

3) Boston/Logan's Motion for Partial Summary Judgment (Docket No. 80) is **DENIED.**

**So ordered.**