NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 17a0537n.06

**Case No. 16-5758**

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED

Sep 22, 2017

DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| **GREEN HILLS MALL TRG, LLC,** | ) | |
| | ) | ON APPEAL FROM THE |
| Plaintiff-Appellee, | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE MIDDLE |
| v. | ) | DISTRICT OF TENNESSEE |
| | ) | |
| **BAKERSOUTH, LLC** | ) | O P I N I O N |
| | ) | |
| Defendant-Appellant. | ) | |

BEFORE: MERRITT, COOK, and McKEAGUE, Circuit Judges.

**McKEAGUE, Circuit Judge.** Defendant BakerSouth, LLC purchased property near a Nashville-area shopping mall. It then sent a letter to the mall's owner, plaintiff Green Hills Mall TRG, LCC, saying that the property came with an easement that let it use the mall's parking lot. Green Hills disagreed and sued for a declaratory judgment challenging BakerSouth's title to the easement. The district court granted Green Hills's motion after tracing BakerSouth's chain of title and finding that one link—the heirs to a deceased lawyer who had held the mall-adjacent property as a trustee—lacked authority to sell the easement.

As this appeal was pending, BakerSouth and the beneficiaries of that deceased lawyer's trust tried to mend this broken link. First, they had a state probate court appoint a successor trustee. Then, they had that successor resell the property and easement to BakerSouth. Green

Hills responded by moving to dismiss this appeal as moot. For the following reasons, we deny the motion to dismiss and affirm the district court's judgment in favor of Green Hills.

**I**

This case involves two properties: the lots BakerSouth claims to own and the lots Green Hills owns. In 2013, BakerSouth bought property on which the City of Nashville formerly operated a public library. BakerSouth maintains that its deed to this property granted it a parking easement over Green Hills's nearby parking lot. Currently, Green Hills uses the allegedly encumbered property for valet parking at its high-end shopping center. BakerSouth's purported easement would disrupt those services.

The issue in this case is BakerSouth's claim to the easement. To evaluate its claim to the property, and thus the easement, the court must trace its chain of title. In the beginning, a now-terminated Tennessee corporation called Green Hills Village, Inc.—not to be confused with plaintiff Green Hills Mall—owned all of the property at issue here. In March 1966, Green Hills Village transferred the lots claimed by BakerSouth to Harlan Dodson, "as Trustee." The deed transferring this property also reserved the disputed parking easement over Green Hills's lots.

A few months later, trustee Dodson conveyed the lots and easement to the Metropolitan Government of Nashville, or "Metro" as the parties call it. Metro took the property subject to the condition that it would only use it to operate a public library. If Metro ever closed the library, title to the property reverted back to Dodson or "his successors and assigns."

This reversion complicated matters after Dodson died in 1986 without appointing a successor. Metro still operated a library on the land, so no one bothered to replace Dodson. When the library finally closed near 2010, the property interests reverted under the deed but Dodson's trusteeship remained empty.

Although Dodson had no successor trustee, he did, however, have three children who were his legal heirs. These heirs—who everyone agrees did not become trustees—entered the picture. After the reversion, they transferred some of the library lots and the parking easement to Thomas White. In 2013, White transferred the lots and the easement to BakerSouth.

Armed with the deed from White, BakerSouth demanded that Green Hills recognize its right to the easement—that is, to recognize BakerSouth's purported right to use the mall's valet parking for its property's parking. After some correspondence, Green Hills filed this suit asking for a declaratory judgment that BakerSouth lacked title to the easement. BakerSouth countered, asking the court to declare that it owned both the easement and the lots it purchased. Both parties moved for summary judgment.

The district court granted Green Hills's motion. It reasoned that the Dodson heirs did take title to the easement after the reversion—albeit only "bare, naked title." The court then held, however, that the heirs could not transfer the easement to White because Tennessee Code § 35-15-707(b) required them to present the trust's property to a state court, which would have to appoint Dodson's successor as trustee.

The court only addressed BakerSouth's right to the easement. It declined to determine whether BakerSouth owned the underlying lots because it concluded that Green Hills never contested BakerSouth's ownership. Thus, the court found no case or controversy to resolve. BakerSouth now appeals the grant of Green Hills's motion for summary judgment and the denial of its own motion.

While this appeal was pending, the beneficiaries of the Dodson trust, with support from BakerSouth, petitioned the Tennessee probate court to appoint a successor. The probate court appointed White—the original intermediary in the BakerSouth sale. White then resold the

property and easement to BakerSouth. Touting this new deed, BakerSouth again wrote Green Hills, demanding that it recognize the easement.

Green Hills continued the fight for its valet parking, however. It moved the probate court to let it intervene in those proceedings. It also asked that court to set aside its order appointing White as trustee and to declare the 2016 conveyance from White to BakerSouth void. The court denied the motion, holding that Green Hills lacked standing to intervene. The Tennessee Attorney General also appeared in the probate proceedings, and has indicated its plans to assert that the trust is charitable under Tennessee law. Additionally, after Green Hills refused to recognize the new deed, BakerSouth filed another lawsuit in state court on May 7, 2017, seeking to quiet title to the easement based on the new deed. Green Hills, of course, is contesting this action.

Citing these events in probate court, Green Hills has moved this court to dismiss this appeal as moot. It argues that BakerSouth has conceded that the district court correctly determined that it did not own the property because BakerSouth is now participating in a probate process that accepts the trust's continued ownership over the property as a premise. Further, Green Hills notes, BakerSouth has repurchased the property it claims to own in this suit. Thus, it argues, a case or controversy no longer exists. BakerSouth responds that pursuing its desired easement through a new avenue does not equate to a concession which renders this appeal moot. We could, it notes, reverse the district court and enter a judgment saying that BakerSouth has owned the land free and clear since 2013. If we did that, it seems, Green Hills's maneuvering in state court would end.

During argument on this case, the panel suggested the parties attempt to resolve their differences through mediation. The parties accepted this suggestion and have been in mediation

for the past few months. Although both the parties and the Sixth Circuit's mediator have worked diligently to reach a settlement, none has been forthcoming. The mediator therefore returned the case to the panel for decision. We affirm the district court.

## II

We address Green Hills's motion to dismiss first. Contrary to Green Hills's arguments, this appeal is not moot. A case only becomes "moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Powell v. McCormack*, 395 U.S. 486, 496, 89 S.Ct. 1944, 23 L.Ed.2d 491 (1969). A case remains "live" when the relief the parties seek, if granted, would make a difference to their "legal interests." *McPherson v. Michigan High School Athletic Ass'n, Inc.*, 119 F.3d 453, 458 (6th Cir.1997) (en banc).

The fight over BakerSouth's title to the trust's former property, including the easement over Green Hills's parking lot, continues in state court. If this court accepts BakerSouth's argument that it received good title in 2013, however, that would end the state-court controversy—BakerSouth would own the lots and easement. Thus, Green Hills's challenge to White's appointment as successor trustee and its challenge to the 2016 sale to BakerSouth would themselves become moot. The only action left would be between the trust's beneficiaries and the heirs who sold the trust's property. Indeed, Green Hills's own actions undercut its argument that the case is moot—it has continued to litigate the merits of the property ownership here in state court despite the district court's judgment. In sum, both parties still have interests at stake.

Rather than a true mootness argument, Green Hills presents more of an estoppel argument: that BakerSouth's actions amount to an admission it never held good title. But BakerSouth's repurchasing the property does not contradict its ownership claim. BakerSouth simply hedged its bets. It can maintain that it has owned the land since 2013 without gambling

everything on this litigation's outcome. Because the probate proceedings neither render this case moot nor estop BakerSouth from pursuing relief here, we deny Green Hills's motion.

### III

With that said, we agree with Green Hills on the merits of this specific issue. This case turns on what happens to trust property under Tennessee law when a trustee dies without a successor. Both parties agree that the title to real property shifts to a trustee's heirs. But may a deceased trustee's heirs—as BakerSouth contends—sell off the trust's property? Or do they—as Green Hills contends—merely serve as conceptual placeholders with limited power to convey trust property? We find that Tennessee common law—and common sense—demand the latter.

We look to common law because the trust code's guidance seems ambiguous here. To be sure, the code explains what should happen to the trusteeship when a trustee dies. If a sole trustee dies, the trust code provides the same method for replacing him as a trustee who quit or was fired. *See* Tenn. Code Ann. § 35-15-704(c). If the trust's terms provide a successor or method for appointing a successor, the trust's terms control. *Id.* If no terms cover the question, the qualified beneficiaries can unanimously agree on a successor. *Id.* But if unanimous agreement does not—or cannot—happen, a state court will appoint the successor. *Id.*

Further, the code also says explicitly what should happen with trust property in some cases. For example, the code says that a "trustee who has resigned or been removed shall, within a reasonable time, deliver the trust property within the trustee's possession to the cotrustee, successor trustee, or other person entitled to it." Tenn. Code Ann. § 35-15-707(b). Thus, we know exactly what happens with trust property when a trustee *resigns* or is *removed*—that is, when he quits or gets fired.

Unlike some states' trust codes, however, Tennessee's code never says explicitly what happens with trust property when a trustee dies. *See* AMY MORRIS HESS, ET AL., BOGERT'S TRUSTS AND TRUSTEES § 529, n.14 (observing the Tennessee trust code's silence on this question). Thus, we have to determine who takes title to the property. And more importantly for this case, we have to determine what rights come with title to the property.

Fortunately, we are not the first court to do so. Under the old trust codes, Tennessee courts faced the same problem. *See Williamson v. Wickersham*, 43 Tenn. 52, 55 (1866). Like today, a statute covered how title moved between resigned or removed trustees and their successors. *Id.* at 56. Like today, a statute provided a mechanism for replacing a dead trustee without a successor. *Id.* And like today, no statute contemplated where title went when a trustee died without a successor. *See id.*

When first faced with the issue, the Tennessee Supreme Court reasoned that title needed some conceptual resting place. *See id.* (stating that title "could not remain in abeyance"). Thus, it crafted a rule to deal with the period after a trustee's death but before a court appointed a successor. *See id.* It held that a trustee's heirs would take "naked legal title" but that the title would automatically divest when a successor was named. *See id.* (citing *Woolridge et al. vs. The Planters' Bank*, 1 Sneed 297 (Tenn. 1853)). As a corollary to the rule giving the heirs title, the court also held that the heirs were necessary parties to any action appointing the successor trustee—at least when the dead trustee had held an estate with an unlimited duration. *See id.*

Later, however, the court repudiated its holding that a trustee's heirs were necessary parties to an action appointing a successor. *See Bransford Realty Co. v. Andrews*, 164 S.W. 1175, 1177 (Tenn. 1914). In doing so, the court relied on what it viewed as the limited rights a trustee's heirs actually have in the trust property. *See id.* The court reasoned that heirs had "no

power respecting the trust estate, nor any interest therein—no rights which they can assert and which it is necessary to cut off." *Id.* In short, they had title in name only. *See id.*

With the modern trust code similarly silent on the issue, we find that rules in *Wickersham*, as modified by *Bransford*, continue to state Tennessee's background rule. The Dodson heirs indeed took title to the trust's property. But the heirs could act only as conceptual placeholders—the title would divest automatically upon a successor's appointment. In the meantime, the heirs had no power to convey trust property. Thus, we agree with Green Hills that BakerSouth never received an enforceable easement via Dodson's heirs in 2013.

BakerSouth resists this reading of Tennessee common law but offers little to persuade us it is wrong. To start, BakerSouth never addresses *Bransford*, let alone cites authority displacing it. Further, BakerSouth's proposed rule—that a trustee's heirs take trust property in fee simple and may freely convey it to third parties—creates troubling results under Tennessee's trustee-succession scheme such that we doubt it accurately states the law. Having beneficiaries unanimously agree on a successor after a trustee dies—or having a court appoint one instead—takes time. Do settlors and beneficiaries really have to worry about whether their deceased lawyer's kids will sell off trust property before this process unfolds? BakerSouth thinks they must but believes the scheme will work just fine because the beneficiaries can still sue the heirs for damages. This possible recourse, however, does not adequately explain why Tennessee law would give a lawyer's children any transitory right to sell trust property before divestment. At any rate, as *Bransford* fortunately shows, BakerSouth's rule is not Tennessee law.

**IV**

We **DENY** Green Hills's motion to dismiss this case as moot. We **AFFIRM** the district court's judgment that the 2013 conveyance gave BakerSouth no enforceable right to an easement

over Green Hills's property. In doing so, however, we express no opinion on the pending probate proceedings (i.e., whether the successor trustee was properly appointed and properly reconveyed the easement to BakerSouth). Neither do we express an opinion on BakerSouth's action to quiet title to the disputed easement based on the *new* deed. Those are questions of Tennessee law that should be resolved by the Tennessee courts.