FILED
01/23/2020
Clerk of the
Appellate Courts

IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
August 13, 2019 Session

## BAKERSOUTH, LLC v. GREEN HILLS MALL TRG, LLC, ET AL.

**Appeal from the Chancery Court for Davidson County**
**No. 17-433-I  Claudia Bonnyman, Chancellor**

_____

### No. M2018-02129-COA-R3-CV

_____

This appeal involves a long-running dispute among neighboring property owners over a parking easement near the Green Hills Mall that was formerly owned by the Metropolitan Government of Nashville and Davidson County in connection with its operation of a public library. The chancery court declared that the plaintiff now owns fee simple title to its lots in addition to the easement appurtenant over the defendants' lots for parking purposes. The defendants appeal. We affirm and remand for further proceedings.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed**

CARMA DENNIS MCGEE, J., delivered the opinion of the court, in which J. STEVEN STAFFORD, P.J., W.S., and ARNOLD B. GOLDIN, J., joined.

Kevin C. Baltz, Nashville, Tennessee, for the appellant, American General Realty Investment Corporation.

Jack R. Dodson, III, Nashville, Tennessee, for the appellee, BakerSouth, LLC.

Joshua R. Denton and Jeremey R. Goolsby, Nashville, Tennessee, for the appellee, Green Hills Mall TRG, LLC.

## OPINION

### I.    FACTS & PROCEDURAL HISTORY

The properties at issue are located near the Green Hills Mall in Nashville, Tennessee. At the outset, we note that the properties are identified by lot numbers according to a recorded subdivision plat, and the specific properties at issue in this case are lots 9, 10, 11, and 12. They appear on the subdivision plat as follows:[1]

_____

[1] We have cropped the image of the subdivision plat to include only the relevant section.



Most of the lots were further subdivided into an eastern and a western half, (*e.g.*, Lot 9 East and Lot 9 West).

In the 1950s, Green Hills Village, Inc. owned all four lots at issue – 9, 10, 11, and 12. On March 31, 1966, Green Hills Village, Inc. conveyed some of the lots by warranty deed to attorney Harlan Dodson "as Trustee." Specifically, the deed conveyed to the Trustee the western fifty feet of Lot 9 and the eastern fifty feet of Lot 10 ("Lots 9 West and 10 East"). In addition, the deed conveyed to the Trustee "[a]n easement for free parking purposes" over the western fifty feet of Lot 10 ("Lot 10 West"), all of Lot 11, and the eastern fifty feet of Lot 12 ("Lot 12 East"). The deed provided that the parcels with the appurtenances were conveyed to "Harlan Dodson, Trustee, his successors and assigns[.]" It further provided that Mr. Dodson, as Trustee, had "full power to sell, transfer and convey [the property] without the joinder of any beneficiary or disclosure of the terms of any trust." The deed did not identify the trust or its beneficiaries.

On May 27, 1966, Harlan Dodson, as Trustee, conveyed the property to the Metropolitan Government of Nashville and Davidson County ("Metro"). The deed provided that Lots 9 West and 10 East were being conveyed to Metro "[i]n consideration of the agreement and undertaking of [Metro] to construct, maintain and operate thereon a branch of the Public Library of Nashville and Davidson County." The deed further conveyed to Metro the easement for "free parking purposes" over Lots 10 West, 11, and 12 East. The deed stated that the conveyance of the parking easement was made "[i]n consideration of the agreement and undertaking of [Metro] to grade, pave and maintain the same for free parking purposes." Finally, the deed to Metro stated,

> It is a condition of the conveyances made by this instrument that if [Metro] should at any future date cease to use the property described in Paragraph 2, above, [Lots 9 West and 10 East] for the maintenance and operation of a Public Library branch, then and in that event all right, title and interest of [Metro] in said property, together with the easement of [Metro] for parking purposes in the property described in Paragraph 3, above, will terminate, and all of [Metro's] said rights, title and interest of every kind whatsoever shall revert to and re-vest in the Grantor [Dodson, as Trustee], his successor and assigns.

The original common owner of the lots, Green Hills Village, Inc., conveyed the lots burdened by the parking easement (Lots 10 West, 11, and 12 East) to Third National Company. The deed to Third National specifically referenced the previous conveyance to Dodson as Trustee and the existing easement over the property for free parking purposes. In 1967, Third National conveyed one of the burdened lots, Lot 10 West, to Metro. (Lot 10 West was subject to the parking easement but immediately adjacent to the area where the library was to be constructed on Lots 9 West and 10 East.) Like the deed from Dodson to Metro, the Third National deed to Metro provided that the conveyance was being made in consideration of Metro's agreement to construct a public library on the property. The deed stated that if Metro at any future date ceased to use the property for the operation of a public library branch, then all right, title, and interest of Metro in the property would terminate, and the interest would revert to Third National, its successors and assigns.

In 1967, Metro constructed a public library branch on not only Lots 9 West and 10 East (conveyed to it by Dodson as Trustee) but also on Lot 10 West (conveyed to it by Third National but originally subject to the parking easement). The following illustration depicts the position of the library building on the lots, with the former Dodson property in red, the former Third National property in green, and the remainder of the parking easement in blue:



Metro operated the library for decades, but at some point after 2000, it stopped using the library building for a public library and instead used the building to house archived records. In 2013, the Metro Council enacted an ordinance relinquishing Metro's interest in the property and recognizing that the property would revert to the grantors.

The parties agree that the reversionary interest in Lot 10 West formerly held by

Third National reverted and now belongs to its successor-in-interest, American General Realty Investment Corporation. The other lots burdened by the parking easement, Lots 11 and 12 East, are owned by Green Hills Mall TRG, LLC ("the Mall").

However, determining the status of the former Dodson parcel and its parking easement was more complicated. The 1966 deed from Dodson to Metro provided that the property and its parking easement would revert to Dodson as Trustee, his successors and assigns. However, Harlan Dodson had passed away in 1986. The heirs of Harlan Dodson and their spouses executed a quitclaim deed conveying any interest they had in the lots and the parking easement to Thomas White, "as Trustee." Metro likewise executed a quitclaim deed conveying any interest it had in the lots and parking easement to Thomas White "as Trustee." Thomas White, purportedly "as Trustee," then conveyed the lots and the parking easement to BakerSouth, LLC.

BakerSouth informed the Mall that it had acquired the former library property and the free parking easement. The Mall had been using the lots burdened by the parking easement for valet parking for the Mall's customers. BakerSouth demanded use of the lots burdened by the parking easement, but the Mall refused.

The Mall filed a lawsuit against BakerSouth in federal district court, asking the court to determine the respective rights of the parties to Lots 9, 10, 11, and 12. *See Green Hills Mall TRG, LLC v. Bakersouth, LLC*, No. 3:14-CV-01675, 2016 WL 2595149, at *2 (M.D. Tenn. May 5, 2016) *aff'd* 709 F.App'x 792 (6th Cir. 2017). The Mall acknowledged that the parking easement was to revert to Trustee Dodson. *Id.* at *3. However, the Mall argued that Dodson's heirs were not trustees, successors or assigns, and therefore, they had no authority to transfer the parking easement to White (who conveyed the property to BakerSouth). *Id.* The district court agreed. Applying Tennessee law, the district court found that when a trustee dies, "naked title passes to the heirs of the trustee" but "subject to be divested on the appointment of his successor." *Id.* (quotation omitted). Under the circumstances, the district court ruled that a new trustee had to be appointed by a court. *Id.* It further ruled that a state court would have to determine who was entitled to the free parking easement. *Id.* As such, the Dodson heirs should have "deliver[ed] the free parking easement to the court." *Id.* They did not have authority to sell it, according to the district court. *Id.* Because the sale from the heirs to White was not valid, White was not entitled to sell the easement to BakerSouth, and BakerSouth was not the owner of the free parking easement.[2] *Id.*

After the district court's ruling, the Dodson heirs and other parties claiming to be

---

[2] The Court of Appeals for the Sixth Circuit later affirmed the district court's judgment, concluding that the heirs of a deceased trustee merely serve as "conceptual placeholders" and that title divests automatically upon a successor's appointment. *Green Hills Mall TRG, LLC v. BakerSouth, LLC*, 709 F. App'x 792, 797 (6th Cir. 2017). As such, BakerSouth did not receive an enforceable easement via the conveyances involving the Dodson heirs. *Id.*

the beneficiaries of the unnamed trust jointly filed a petition to appoint a successor trustee in the probate division of the circuit court for Davidson County.[3] All of the petitioners consented to the appointment of Thomas White as successor trustee of the trust. (Thomas White was the same individual to whom the heirs and Metro had attempted to quitclaim the property years earlier.) On November 9, 2016, the probate court entered an order appointing White as the successor trustee of the unnamed trust. The probate court found that all beneficiaries had consented to the relief sought in the petition. It also found that appointment of a successor trustee was necessary to administer the single asset held by the subject trust. As such, the probate court found that the petition was well taken and should be granted. The Mall later filed a motion to intervene and set aside the order appointing the successor trustee in the probate proceeding, but that motion was denied.

After the entry of the probate court's order appointing him as successor trustee, Thomas White executed another quitclaim deed conveying Lots 9 West and 10 East and the parking easement over the neighboring properties to BakerSouth. BakerSouth then filed this lawsuit in the chancery court of Davidson County against both the Mall (owner of Lots 11 and 12 East) and American General (owner of Lot 10 West, also originally burdened by the parking easement). BakerSouth characterized its complaint as one to quiet title and for declaratory judgment as it related to both defendants, but it also sought injunctive relief and compensatory and punitive damages against the Mall only. BakerSouth alleged that its lots rely on the parking easement for parking, yet the Mall had blockaded those lots and prevented any use by BakerSouth. As such, BakerSouth alleged that the Mall's denial of access to the parking easement had prevented BakerSouth from developing its lots and caused it to lose rental income from the to-be-developed property.

BakerSouth filed a motion for partial summary judgment as to its claim to quiet title and declare its ownership of the lots and parking easement. BakerSouth claimed that it had received deeds "from all potential titleholders to the subject property" and that it was the legal owner of not only Lots 9 West and 10 East but also the parking easement over the lots owned by the Mall and American General. In support of its motion, BakerSouth filed numerous deeds, the subdivision plat, the district court's opinion, and the probate court's orders. BakerSouth asked the court to enter an order declaring its ownership interests and removing any cloud on its title.

American General filed a response along with a cross-motion for summary judgment. American General admitted that fee simple title to Lots 9 West and 10 East reverted to the Trustee when Metro stopped using the property for a library. It also admitted that the successor trustee appointed by the probate court conveyed the property

---

[3] According to the petition, the sole asset contained in the trust is the reversionary interest in the real property at issue in this case. The petition states that aside from the original deed at issue in this case, no other written instrument was executed involving the trust.

to BakerSouth. Still, American General asserted that BakerSouth held no ownership interest in the parking easement because it had been extinguished. First, American General argued that the parking easement over Lot 10 West was extinguished by merger through unity of title when Metro owned the parking easement over Lot 10 West and then Third National conveyed the fee title to Lot 10 West to Metro as well. Alternatively, American General argued that the parking easement over Lot 10 West was abandoned when Metro did not use Lot 10 West for parking but instead constructed a portion of the library building on the lot. American General supported its motion by filing numerous deeds, an affidavit, and other documents. According to the affidavit, the construction of the library building on Lot 10 West made it impossible to use Lot 10 West for parking. BakerSouth filed a response, disputing the arguments made by American General in its response and motion.

The Mall did not file a separate motion for summary judgment, but it did file a response in opposition to BakerSouth's motion for partial summary judgment. The Mall argued that the order entered by the probate court was an interlocutory order and that it did not specifically grant the successor trustee any authority to convey property belonging to the trust. Consequently, the Mall argued that the most recent deed from the successor trustee to BakerSouth was ineffective. In support of these arguments, the Mall submitted the petition filed in probate court, the order appointing the successor trustee, the transcript from the hearing on its motion to intervene, and other documents.

On October 31, 2018, the chancery court entered an order on the cross-motions for summary judgment and ruled in favor of BakerSouth on both. The chancery court made specific findings regarding the alternative arguments presented by American General. First, it found that the parking easement was not extinguished through merger of title when Metro obtained an interest in Lot 10 West and the parking easement over Lot 10 West because Metro was not the only party with an interest in the lot. Because Trustee Dodson held a reversionary interest in the parking easement over the lot, the trial court held that the easement was not extinguished by merger of title.

Next, the chancery court addressed American General's argument regarding abandonment of the easement due to Metro's construction of the building on Lot 10 West. It found that even if Metro arguably waived its right to use the parking easement, the trustee holding the reversionary interest in the easement did not. Because not all parties with an interest in the easement indicated abandonment of their interests, the chancery court found that no abandonment of the easement occurred.

The chancery court also noted that the Mall did not file a separate motion for summary judgment but did respond to BakerSouth's motion. It briefly mentioned the Mall's argument that the probate court order was not final and did not empower the successor trustee to convey the property. Without elaboration, the chancery court simply found that the parking easement "reverted to the Trustee appointed on November 9,

2016," Thomas White, and "the Trustee validly conveyed the BakerSouth Lots and the Parking Easement by warranty deed to BakerSouth on December 1, 2016." Thus, the chancery court ruled that BakerSouth's parking easement burdening Lots 10 West, 11, and 12 East is valid and enforceable. The chancery court certified its partial summary judgment order as final pursuant to Tennessee Rule of Civil Procedure 54.02. The claims for damages and injunctive relief with respect to the Mall remained pending. American General timely filed a notice of appeal.

## II. ISSUES PRESENTED

American General raises the following issues, as we perceive them, for review on appeal:

1.      Whether the parking easement burdening Lot 10 West was extinguished by the doctrine of merger through unity of title; and

2.      Whether Metro had authority to abandon the parking easement with respect to Lot 10 West and did so by failing to utilize it for parking and constructing a building on the lot.

In its posture as appellee, the Mall raises the following additional issues:

3.      Whether BakerSouth could acquire title to the property through an interlocutory order of the probate court that appointed a successor trustee but did not specify the powers of the successor trustee; and

4.      Whether summary judgment was improper because BakerSouth failed to join all indispensable parties in this case.

BakerSouth responds to the arguments raised by American General and the Mall and rewords the issues in that regard, but it does not present any additional unrelated issues for review on appeal.

## III. STANDARD OF REVIEW

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Tenn. R. Civ. P. 56.04. Appellate courts review a lower court's decision regarding summary judgment de novo with no presumption of correctness. *Kershaw v. Levy*, 583 S.W.3d 544, 547 (Tenn. 2019).

IV.   DISCUSSION

"In an action to quiet title, a plaintiff must aver and prove title in itself." *Davidson Pabts, LLC v. Worsham*, No. M2014-01061-COA-R3-CV, 2015 WL 4115174, at *4 (Tenn. Ct. App. May 18, 2015) *perm. app. denied* (Tenn. Sept. 17, 2015). Here, BakerSouth moved for summary judgment claiming that it was the legal owner of not only Lots 9 West and 10 East but also the parking easement over the lots owned by the Mall and American General. BakerSouth claimed that it had received deeds "from all potential titleholders to the subject property." BakerSouth submitted the relevant deeds discussed herein, the subdivision plat, the opinion of the federal district court, and the probate court's orders. Thus, BakerSouth asked the court to declare its ownership interests and remove any cloud on its title.

We conclude that BakerSouth's motion was properly supported and sufficient to establish the elements of its action to quiet title. *See Davidson Pabts*, 2015 WL 4115174, at *4. As such, the burden shifted to the defendants to set forth specific facts establishing that there were genuine issues of material fact remaining for trial. *See id.* "If reasonable minds could justifiably reach different conclusions based on the evidence at hand, then a genuine question of fact exists." *Green v. Green*, 293 S.W.3d 493, 514 (Tenn. 2009).

American General and the Mall presented separate arguments in response to the motion for summary judgment, which we will address in turn.

### A.   *Extinguishment by Merger of Title*

We begin with American General's contention that the parking easement over Lot 10 West was extinguished by merger of title in 1967 when Metro owned the parking easement and then obtained title to the lot itself. To resolve this issue, it is helpful to examine the nature of the interests held by each party.

"'An easement is a right an owner has to some lawful use of the real property of another.'" *Cellco P'ship v. Shelby Cty.*, 172 S.W.3d 574, 588 (Tenn. Ct. App. 2005) (quoting *Pevear v. Hunt*, 924 S.W.2d 114, 115 (Tenn. Ct. App. 1996)). In the case of an easement appurtenant to the land, there are two tracts, and the dominant tenement benefits in some way from the use of the servient tenement. *Newman v. Woodard*, 288 S.W.3d 862, 865 (Tenn. Ct. App. 2008). "Easements appurtenant run with the land and may be enforced by subsequent purchasers of the dominant tenement against owners of the servient tenement." *Id.*

An easement "may be created to burden or benefit any estate in land[.]" Restatement (Third) of Property (Servitudes) § 2.5 (2000). "Servitudes can be created to burden both present possessory estates and future estates. Likewise, they can be created to benefit present and future estates." *Id.* at cmt. *a*. Even though appurtenant easements

generally can only be fully used in connection with possession of the dominant estate, holders of future interests are "entitled to bring legal actions to protect their rights to future use of the easement[.]" Restatement (Third) of Property (Servitudes) § 5.2 cmt. *c.* (2000).

An easement created by express grant can be extinguished:

'by an act of the dominant owner, either by release or abandonment, by act of the servient owner by prescription or conveyance to a bona fide purchaser without notice, by the conduct of both parties, such as by merger or estoppel, or by eminent domain, mortgage, foreclosure, or tax sale.'

*Smith v. Evans*, No. M2007-02855-COA-R3-CV, 2008 WL 3983117, at \*4 (Tenn. Ct. App. Aug. 27, 2008) (quoting 25 Am.Jur.2d *Easements and Licenses* § 95). Under the doctrine of merger, "[w]hen one party acquires a fee title to both the servient and dominant estates, the easement merges into the interest of the servient estate and terminates." *Honeycutt v. Price*, No. 03A01-9610-CH-00329, 1997 WL 269472, at \*2 (Tenn. Ct. App. May 21, 1997) (quotation omitted). "As a general matter of law, the owner of a fee simple interest in property cannot also have an easement over the same property. Thus, when the holder of an easement acquires fee simple ownership of the property, the doctrine of merger extinguishes the easement, thereby leaving only the fee simple estate." *Hall v. Pippin*, 984 S.W.2d 617, 622 (Tenn. Ct. App. 1998).

However, "unity of title must exist in the same person, and ownership of the dominant and servient estates must be coextensive and equal in validity, quality, and all other circumstances of right." *Honeycutt*, 1997 WL 269472, at \*2. For example, "an easement will not merge when an intervening life estate prevents complete unity of ownership in the domina[nt] and servient estates." *Id.* "[C]ourts will normally not apply the doctrine of merger in situations where third parties have independent interests in an easement that would, apart from the merger of the interests, qualify the owner's unlimited use of the fee estate." *Hall*, 984 S.W.2d at 622. "When third parties continue to have an interest in an easement, the doctrine of merger does not operate to cut off their interest." *Id.*; *see, e.g.*, *Honeycutt*, 1997 WL 269472, at \*2 (explaining that existing third party rights to a right-of-way precluded application of the doctrine of merger); *Reagan v. Estabrook*, No. 03A01-9101-CH-308, 1992 WL 8749, at \*11 (Tenn. Ct. App. Jan. 23, 1992) (finding an easement was not extinguished by merger of title because "the total ownership of the dominant and servient tenements ha[d] not vested in the same person or persons"); *House v. Close*, 48 Tenn. App. 341, 349 (1961) (recognizing that "an intermediate interest in land in favor of a third party [is] unaffected by the doctrine of merger").

On appeal, American General acknowledges that both the Dodson deed to Metro and the Third National deed to Metro provided that Metro would hold title to those

- 9 -

properties only until it ceased to use them for the operation of a public library branch. American General concedes that these deeds created fee simple determinable interests with the possibility of reverter. If Metro stopped using the properties for a library, Lots 9 West and 10 East, along with the parking easement, would revert to Dodson as Trustee, and Lot 10 West would revert to Third National.[4] Still, American General argues that these reversionary interests, a mere possibility of reverter, are not the type of outstanding interest that prevents merger through unity of title. According to American General, because no one else held a "present interest" in the property, aside from Metro, the easement was extinguished. We disagree.

"A fee simple determinable is a fee simple which may endure in the grantee forever, but which is subject to a special limitation that may cause the estate to revert to the grantor." *Griffis v. Davidson Cty. Metro. Gov't*, 164 S.W.3d 267, 274 (Tenn. 2005) (citing *Yarbrough v. Yarbrough*, 151 Tenn. 221, 269 S.W. 36, 37-38 (1925); 28 Am.Jur.2d *Estates* § 26 (2004)). The fee simple determinable estate will terminate automatically when the property is no longer used as required. *Id.* "The future interest retained by the grantor of a fee simple determinable is a mere possibility of reverter." *Id.* (citing *Mountain City Missionary Baptist Church v. Wagner*, 193 Tenn. 625, 249 S.W.2d 875, 876 (1952)). A "possibility of reverter" is "[a] reversionary interest that is subject to a condition precedent; [specifically], a future interest retained by a grantor after conveying a fee simple determinable, so that the grantee's estate terminates automatically and reverts to the grantor if the terminating event ever occurs." *Black's Law Dictionary* (11th ed. 2019). However, "'[a] fee simple determinable and the possibility of reverter that accompanies it are both interests that vest immediately upon their creation.'" *Lasater v. Hawkins*, No. M2010-01495-COA-R3-CV, 2011 WL 4790971, at *11 (Tenn. Ct. App. Oct. 10, 2011) (quoting 28 Am.Jur.2d *Estates* § 32 (2000)).

Other courts have held that outstanding reversionary interests in an easement preclude merger through unity of title. For instance, in *City of Revere v. Bos./Logan Airport Assocs., LLC*, 416 F. Supp. 2d 200, 204 (D. Mass. 2005), a federal district court considered whether a parking easement was extinguished by the doctrine of merger when one party obtained concurrent ownership of both the dominant and servient parcels. That party's ownership of the servient parcel was conditioned on its completion of certain construction obligations in a timely manner, and the property would revert to the city in the event of default. *Id.* at 203-204. Because of that reversionary interest in one parcel, the district court held that the doctrine of merger did not apply to extinguish the parking easement. *Id.* at 205-206. The parking easement continued to serve a function because the ownership of the servient estate was not unconditional. *Id.* at 206. The court

---

[4] Before the trial court, American General alternatively argued that the parking easement terminated pursuant to the terms of the deed when Metro stopped operating the library, so the easement did not revert to the trustee along with Lots 9 West and 10 East. The trial court rejected this argument, finding that all of Metro's interests in the entire conveyed property reverted to the trustee, including the parking easement. American General has not appealed that ruling.

explained that "the doctrine of merger applies only where the relevant estates are indefeasible[.]" *Id.* at 205. It recognized "an exception to the merger doctrine in cases where unity of title extends merely to defeasible estates."[5] *Id.* Because of the possibility of reverter to the city, the owner of the properties "never held a sufficiently unconditional ownership interest in the [servient parcel] to activate the merger doctrine." *Id.* at 206.

The comments to the Restatement of Property provide further guidance with respect to unity of ownership of estates:

> *b. "Unity of ownership of estates."* The phrase "unity of ownership of estates" as used in this Section applies to the unity in one person of estates in a dominant and servient tenement. The term "estate" as used in the Restatement of Property means an interest in land which is or may become possessory (see § 9). . . . The unity of ownership of estates referred to in this Section includes unity of future as well as unity of present estates. Thus it applies to the unity of such interests as reversions as well as to the unity of present estates in fee simple, for life, or for years.
> . . . .
> *d. Extinguishment by unity of limited interests in dominant and servient tenements.* The extinguishment of easements by the unity of ownership of estates in the dominant and servient tenements does not affect interests in those tenements not included in the unity of ownership. As to such interests, easements appurtenant existing before the unity continue to exist thereafter. . . . . [I]f either a dominant or a servient tenement held in fee is subject to a power of termination or to an executory interest, and the fee ownership in the dominant tenement is united with the fee ownership in the servient tenement, the power of termination or the executory interest remains unaffected by such unity. Accordingly, if the power of termination or the executory interest becomes possessory, the possessory estate is entitled to the benefit, or remains subject to the burden, of the easement.

Restatement (First) of Property § 497 cmts. *b, d* (1944). The comments to the Restatement (Third) of Property further explain, regarding merger:

> *d. Merger does not take place if there are any outstanding interests in the servitude.* So long as there are any outstanding interests in the property or estate benefited or burdened by the servitude, merger does not take place. If the outstanding interests are future rather than present interests, and the

---

[5] A "defeasible estate" means "[a]n estate that may come to an end before its maximum duration has run because of the operation of a special limitation, a condition subsequent, or an executory limitation. If an estate is defeasible by operation of a special limitation, it is called a *determinable* estate." *Black's Law Dictionary* (11th ed. 2019).

owner of the future interest has no right to present enjoyment of the servitude; the servitude is suspended until the future interest becomes possessory.

Restatement (Third) of Property (Servitudes) § 7.5 cmt. *d* (2000). *See also Zanelli v. McGrath*, 166 Cal. App. 4th 615, 629 (2008) ("[I]f the fee ownership of either the dominant or servient tenement is subject to a power of termination, *reversion* or executory interest, the future nonpossessory interests are unaffected by merger. If they become possessory, the possessory estate is entitled to the benefit, or remains subject to the burden of the easement.") (emphasis added); *Brush Creek Airport, L.L.C. v. Avion Park, L.L.C.*, 57 P.3d 738, 748 (Colo. Ct. App. 2002) ("To effect extinguishment by merger, the common ownership of both the dominant and servient estates must be absolute, not defeasible or determinable[.]").

We find these authorities persuasive and affirm the trial court's conclusion that the conveyances to Metro did not extinguish or merge the easement rights belonging to Trustee Dodson or his successors.[6] No genuine issue of material fact exists with respect to this issue.

## B. Extinguishment by Abandonment

The next issue presented on appeal is whether the trial court erred in concluding that the parking easement was not extinguished by abandonment. American General argues that Metro had the ability to abandon the parking easement despite the reversionary interest held by the grantor, Trustee Dodson. American General contends that Metro abandoned the parking easement in 1967 by constructing a building on Lot 10 West instead of using it for parking.

The party asserting abandonment of an easement must prove it by clear and

---

[6] We note that the parking easement burdened not only Lot 10 West, the immediately adjacent parcel, but also Lots 11 and 12 East. Yet, American General has only asserted merger by unity of title with respect to Lot 10 West, a portion of the original servient estate. We express no opinion as to the validity of such an argument. *See Fischer v. Anger*, 283 A.D.2d 865, 868 n.2 (N.Y. App. Div. 2001) ("Where, as here, only a portion of the servient estate [] is conveyed, there is no complete unity of title and the easement is, therefore, not extinguished[.]"); *Teal Trading & Dev., LP v. Champee Springs Ranches Prop. Owners Ass'n*, 432 S.W.3d 381, 394 (Tex. Ct. App. 2014) ("Termination by merger could only happen [] if all the burdened and benefitted properties came back into the ownership of a single entity."); *but see Lindsay v. Annapolis Roads Prop. Owners Ass'n*, 431 Md. 274, 293 n.20 (2013) (finding partial merger as to some lots but not others); *Cheever v. Graves*, 32 Mass. App. Ct. 601, 606 (1992) ("The common ownership need not extend to the whole of the original dominant estate."); *Schlager v. Bellport*, 118 Wash. App. 536, 540 (2003) (concluding that partial merger is permissible). Because we have found the doctrine of merger inapplicable on a different ground, due to the existence of outstanding reversionary interests, this opinion should not be construed as addressing the issue of partial merger, which was not raised in the parties' briefs on appeal.

convincing evidence. *Roland v. Bridwell*, No. E2014-00435-COA-R3-CV, 2014 WL 5317859, at \*7 (Tenn. Ct. App. Oct. 20, 2014). "The abandonment of an easement[,] like the abandonment of any property right, must be accompanied by the requisite intent to abandon." *Edminston Corp. v. Carpenter*, 540 S.W.2d 260, 262 (Tenn. Ct. App. 1976). The "'intention to abandon'" is the paramount inquiry. *Bailey v. Gwyn*, No. E2006-01461-COA-R3-CV, 2007 WL 2405135, at \*2 (Tenn. Ct. App. Aug. 24, 2007) (quoting *Smelcer v. Rippetoe*, 147 S.W.2d 109, 113-14 (Tenn. Ct. App. 1940)). Mere nonuse will not amount to abandonment of an easement. *Id.* Rather, "[t]he failure to use must be accompanied by some act of the owner of the dominant estate clearly indicating his purpose to set up no further claim in order to work abandonment." *State ex rel. Phillips v. Smith*, 241 S.W.2d 844, 846 (Tenn. Ct. App. 1950). "'[T]here must be some clear and unmistakable affirmative act indicating a purpose to repudiate the ownership.'" *Bailey*, 2007 WL 2405135, at \*2 (quoting *Smelcer*, 147 S.W.2d at 113-14). Thus, the party asserting abandonment must show both the intention to abandon and also external acts carrying that intention into effect. *Roland*, 2014 WL 5317859, at \*7.

Here, the trial court found that when deciding the issue of abandonment, we "must also take into account the interest in real property that the Trustee retained, i.e., the possibility of reverter." The trial court found no proof to indicate that *the Trustee* waived or abandoned its reversionary interest with respect to the easement. Because "all of the parties holding an interest in the easement did not waive or abandon their interests in the real property," the trial court found that no abandonment had occurred regardless of Metro's actions. We agree with this conclusion.

Tennessee courts have stated that the party alleging abandonment must present "proof that the easement holder *or holders* intended to abandon the easement." *Watson v. Ball*, No. E2002-00072-COA-R3-CV, 2003 WL 465837, at \*3 (Tenn. Ct. App. Feb. 25, 2003) (emphasis added) (quoting *Hall v. Pippin*, 984 S.W.2d 617, 621 (Tenn. Ct. App. 1998)). Our research has not revealed any cases in which Tennessee courts have considered the issue of abandonment of an easement in the unique context of determinable and reversionary interests. However, we have considered allegations of abandonment when more than one party held an interest in an easement and the alleged abandonment would prejudice the rights of other parties.

For instance, in *Smelcer v. Rippetoe*, 147 S.W.2d 109, 112 (Tenn. Ct. App. 1940), a landowner had purchased property with an easement appurtenant granting him the right to maintain an existing dam across a creek. He executed a trust deed on the property, and years later, the dam was destroyed. *Id.* The landowner allegedly told several parties that he did not intend to rebuild the dam, and the issue before this Court was whether this was sufficient evidence of abandonment of the easement. *Id.* at 113. We held that the landowner's actions were not controlling because he "was not in [a] position to foreclose the rights of [the other parties] to whom he had executed a mortgage on the property." *Id.* The landowner's statement "was not sufficient to divest them of the right" to rebuild

- 13 -

the dam in the event of foreclosure. *Id.* Those parties' rights were preserved "regardless of the actions of [the landowner]." *Id.* at 114. The easement was an appurtenance to the land at the time the trust deed was placed on the property. *Id.* Even if the landowner himself subjectively intended to abandon the easement, "[a]fter [he] had conveyed the property in trust[,] he could not abandon the easement so as to bind those claiming under him by a subsequent act[.]" *Id.*

More recently, in *Holder v. Serodino*, No. M2014-00533-COA-R3-CV, 2015 WL 5458377, at *1 (Tenn. Ct. App. Sept. 16, 2015), we considered allegations of abandonment of an easement for a private airstrip. The original owner conveyed tracts to both the appellant and appellee that would benefit from and be burdened by the airstrip easement. *Id.* at *8. Thereafter, the original owner and the first purchaser executed and recorded an "Abandonment of Easement" purportedly terminating the airstrip easement. *Id.* at *1, 3. The other purchaser learned of the recorded instrument and filed suit. *Id.* at *3. This Court emphasized that abandonment must be proven by clear and convincing evidence of *the easement holder's* intention to abandon his property rights. *Id.* at *11 (citing *Hall*, 984 S.W.2d at 620-21). As such, the "false assertions of abandonment" by the common grantor and only one purchaser were insufficient to terminate the easement rights of the dominant estate. *Id.*

Finally, in *Boyd v. Hunt*, 52 S.W. 131, 134 (Tenn. 1899), the Tennessee Supreme Court held that a husband could not abandon an easement where he had previously conveyed it to his wife for life, and at her death, to her surviving children. Even though the man later built a wall allegedly indicating an intention to abandon the easement, he did so "when he was managing it for a minor remainder-man, whose interest he could not prejudice by any such personal action." *Id.*; *see also Myers v. Wilson*, No. E1998-00732-COA-R3-CV, 2000 WL 210266, at *5 (Tenn. Ct. App. Feb. 24, 2000) (finding no abandonment by a landowner despite allegation that he and his tenant abandoned an easement).

These and other authorities convince us that Metro could not unilaterally abandon the parking easement in a manner that would prejudice the reversionary interest of Trustee Dodson. *See Smith*, 2008 WL 3983117, at *4 ("An easement 'created by reference to a filed map can be extinguished only by the united action of all lot owners for whose benefit the easement is created[.]'") (quoting 28A C.J.S. *Easements* § 140 (2008)); 28A C.J.S. Easements § 148 ("Acts evincing an intention to abandon must be unequivocal, clearly demonstrate the permanent relinquishment of all rights to the easement, and be an act of the easement holder."); Restatement (Third) of Property (Servitudes) § 7.4 Reporter's Note (2000) ("Abandonment is only effective to terminate a servitude if all benefited parties abandon their interests.").[7]

---

[7] Our conclusion is also supported by the nature of a fee simple determinable. In *Williamson v. Grizzard*, 387 S.W.2d 807, 810 (Tenn. 1965), our supreme court held that a church with a fee simple

- 14 -

Because American General points to no evidence to suggest abandonment by Trustee Dodson (or his successors or assigns), we affirm the trial court's grant of summary judgment with respect to this issue.

### C.    Authority of the Successor Trustee

Now we turn to the issues raised on appeal by the Mall.[8]  The Mall argues that the trial court erred in granting partial summary judgment to BakerSouth because BakerSouth did not acquire valid title from the successor trustee.  Specifically, the Mall asserts that the probate court's order appointing the successor trustee was interlocutory in nature and did not specifically grant the successor trustee any authority to convey property.  Consequently, the Mall argues that the most recent deed from the successor trustee to BakerSouth was ineffective.  We find no support for this argument.

The Dodson heirs and other parties claiming to be the beneficiaries of the unnamed trust jointly filed a lengthy petition to appoint a successor trustee in the probate division of the circuit court for Davidson County.  All of the petitioners consented to the appointment of Thomas White as successor trustee.  The petition asked the probate court to appoint Thomas White as successor trustee "with all specific powers set forth in T.C.A. § 35-15-186, along with any additional powers that the Court may grant[.]"  On November 9, 2016, the probate court entered an order appointing White as the successor trustee.  The probate court found that all beneficiaries had consented to the relief sought in the petition and that appointment of a successor trustee was necessary to administer the single asset held by the subject trust.  The Mall argues that this order was insufficient to authorize the successor trustee to convey the property at issue because the order did not explicitly rule on the petitioners' request for the successor trustee to have the designated powers mentioned above.  Without some explicit ruling as to the trustee's powers, the Mall argues that the order was interlocutory and that the successor trustee was appointed but "with no power."

The probate court's order stated that the petition was well-taken and granted.  It specifically discussed the facts surrounding the Dodson deed to Metro and stated:

---

determinable interest could not take a proposed action that would substitute a different parcel and "severely limit the reversionary rights of the appellees" who held the possibility of reverter.

[8] We recognize that the trial court's partial summary judgment order disposed of all claims asserted by BakerSouth against one party -- American General.  However, BakerSouth's claims against the Mall for injunctive relief and damages remain pending before the trial court.  The trial court certified its order as final pursuant to Rule 54.02.  In its posture as appellee, the Mall has raised additional issues on appeal.  We question the propriety of this course of action.  However, if it was not appropriate for the trial court's order to be certified as final pursuant to Rule 54.02 or for the Mall to raise additional issues in this appeal, we allow the appeal to proceed as an interlocutory appeal in the interest of judicial economy. *See Roberts v. Bailey*, 338 S.W.3d 540, 541 n.1 (Tenn. Ct. App. 2010).

> The heirs of William C. "Bill" Weaver, Jr. and William H. Criswell have petitioned the Court to appoint Thomas V. White as the successor trustee of an unnamed trust which was created by the execution and delivery of a warranty deed dated May 23, 1966 (the "Original Deed") conveying a parcel of real property located in Nashville, Davidson County, Tennessee (the "Real Property") from Settlor Green Hills Village, Inc., a terminated Tennessee corporation, to Harlan Dodson, as [T]rustee (the "Original Trustee"), for the benefit of unnamed beneficiaries. . . . Original Trustee, Harlan Dodson, subsequently conveyed the Real Property by warranty deed to the Metropolitan Government of Nashville and Davidson County, Tennessee ("the Metro Deed") for use as a public library. . . . The Metro Deed provided that in the event that Metro ceased using the property for a public library, the property and an easement for free parking would revert back to the trustee, Harlan Dodson. At some time after the year 2000, Metro ceased using the property for a public library triggering the reversionary clause of the deed. Unfortunately, at that time, Kemper Harlan Dodson was deceased. As such, the Court finds that *appointment of a successor trustee is necessary to administer the single asset held by the subject trust.*

(emphasis added). Thus, the order contemplated that the successor trustee would administer the reversionary interest in the property at issue. The record contains nothing to suggest that the trial court's appointment was not intended to take effect immediately or that it was otherwise limited in nature.

Moreover, the deed creating the trust and conveying the property to Dodson as Trustee granted him "full power to sell, transfer and convey without the joinder of any beneficiary or disclosure of the terms of any trust."[9] It provided that Harlan Dodson, Trustee, and his successors and assigns, would have and hold "the said tracts or parcels of land with the appurtenances, estate, title, interest, options and rights thereto[.]" The Tennessee Uniform Trust Code provides that a trustee, "without authorization by the court," may exercise powers conferred by the terms of the trust. Tenn. Code Ann. § 35-15-815(a)(1). Unless limited by the terms of the trust, the trustee may also exercise "[a]ll powers over the trust property which an unmarried competent owner has over individually owned property[.]" Tenn. Code Ann. § 35-15-815(a)(2).

The Mall has not demonstrated that the successor trustee lacked authority to convey the property simply by arguing that the probate court's 2016 order was interlocutory or that it failed to set forth more specific authority for the successor trustee. We reject the Mall's assertion that the successor trustee appointed by the probate court

---

[9] The parties agree that the trust was created by the warranty deed.

- 16 -

had "no power," such that his conveyance of the property was invalid.

### D. Indispensable Parties

Finally, we address the Mall's contention that summary judgment was inappropriate because indispensable parties were not before the trial court. The Mall argues that the Tennessee Attorney General was a necessary party to this declaratory action to quiet title filed in chancery court. As support for its argument, the Mall relies on a transcript from the hearing in *the probate proceeding* during which the probate court considered and denied the Mall's motion to intervene. During that hearing, an assistant attorney general also appeared and briefly addressed the court. She stated that the attorney general's office had not had the opportunity to file a motion to intervene since beginning work on the case approximately a month earlier. However, she stated that she did intend to file a motion to intervene based on the belief that the unnamed trust was potentially a charitable trust or involved a charitable gift.

In response to her announcement, counsel for BakerSouth argued that the trust was not charitable due to the deed giving the trustee full power to convey the property, but in any event, he argued that the issue of whether a charitable trust was created was not properly before the court at a hearing on a motion to intervene filed by the Mall. He noted that the issue could be addressed if and when the attorney general filed a motion to intervene, but counsel stated that he intended to discuss the issue with the assistant attorney general after the hearing and attempt to "dissuade them from pursuing this any further." The judge denied the motion to intervene filed by the Mall and noted that the attorney general may eventually file a motion to intervene but that it had not done so as of yet. The judge also remarked that he was not yet persuaded that the trust was a charitable trust.

The Mall does not suggest that the attorney general ever actually filed a motion to intervene in the probate proceeding, and BakerSouth represents that it did not. At oral argument before this Court, counsel for the Mall conceded that he was not aware of any motion to intervene actually filed by the attorney general. The hearing when the statement was made was held nearly three years ago, in February 2017. The attorney general has not attempted to intervene in this litigation either.

The Mall cites Tennessee's Declaratory Judgments Act, which provides, "When declaratory relief is sought, all persons shall be made parties who have or claim any interest which would be affected by the declaration, and no declaration shall prejudice the rights of persons not parties to the proceedings." Tenn. Code Ann. § 29-14-107(a).[10]

---

[10] We also note that "'[a]ll parties with any claims to the property, or material interests that might be affected, are considered necessary and indispensable to an action to quiet title.'" *Scott v. Ditto*, No. E2017-01356-COA-R3-CV, 2018 WL 6431766, at *4 (Tenn. Ct. App. Dec. 6, 2018) (quoting 65 Am. Jur.

- 17 -

Parties are deemed necessary parties "when their absence from the action could cause recurring litigation on the same subject because the declaratory judgment, if rendered, 'would not terminate the uncertainty or controversy giving rise to the proceedings.'" *Tenn. Farmers Mut. Ins. Co. v. DeBruce*, 586 S.W.3d 901, 906 (Tenn. Oct. 16, 2019) (quoting *Reed v. Town of Louisville*, No E2006-01637-COA-R3-CV, 2007 WL 816521, at *2 (Tenn. Ct. App. Mar. 19, 2007)). "Parties who might be remotely affected by the declaratory judgment need not be joined." *Id.* "The Act contemplates that there may be parties whose rights are affected but who are not joined in the declaratory judgment action," as it expressly provides that "*no declaration shall prejudice the rights of persons not parties to the proceedings.*" *Id.* (quoting Tenn. Code Ann. § 29-14-107(a)) (emphasis in *DeBruce*).

The issue, then, is whether the attorney general has "any interest which would be affected by the declaration" in this chancery court action for declaratory judgment. *See id.*; Tenn. Code Ann. § 29-14-107(a). In support of its position that the attorney general is a necessary party, the Mall relies on Tennessee Code Annotated section 35-13-110, which provides:

> (a) In all court actions directly affecting the amount, administration or disposition of a charitable gift or a discretionary charitable gift, the court may require that the attorney general and reporter be made a party to represent the charitable beneficiaries, potential charitable beneficiaries and all citizens of the state in all legal matters pertaining to the amount, administration and disposition of a charitable gift or discretionary charitable gift. . . .

> (b) It is unlawful to settle any litigation concerning the validity of a charitable gift or discretionary charitable gift without first obtaining the approval of the court. . . .

Our review of this statute does not lead us to conclude that the attorney general is a necessary party to this litigation. Despite clear knowledge of the litigation in probate court, the attorney general apparently decided not to move to intervene in that action directly involving the unnamed trust. More importantly, this chancery court action simply does not involve "a charitable gift or a discretionary charitable gift." *See id.* This is an action among neighboring landowners. Neither the unnamed trust nor the trustee is a party to this action. Thus, the attorney general's absence from this litigation does not impede the full termination of the controversy between BakerSouth and the Mall. *See DeBruce*, 2019 WL 5198430, at *5.

---

2d *Quieting Title* § 66). However, the Mall confines its argument on appeal to necessary parties within the meaning of the Declaratory Judgments Act.

## V. CONCLUSION

For the aforementioned reasons, the decision of the chancery court is hereby affirmed and remanded. Costs of this appeal are taxed equally to the appellant, American General Realty Investment Corporation, and to the appellee, Green Hills Mall TRG, LLC, for which execution may issue if necessary.

_____

CARMA DENNIS McGEE, JUDGE